783 So.2d 1251 (2001)
Robert BOURGEOIS, et al.
v.
A.P. GREEN INDUSTRIES, INC., et al.
No. 2000-CA-1528.
Supreme Court of Louisiana.
April 3, 2001.
Rehearing Denied May 4, 2001.
*1252 Robert E. Caraway, III, Kenan S. Rand, Jr., Wendy K. Lappenga, Plauche, *1253 Maselli, Landry & Parkerson; Lisa E. Ciolino, Janet L. MacDonell, Arthur W. Stout, III, William C. Harrison, Jr., Deutsch, Kerrigan & Stiles, New Orleans; Mickal P. Adler, Virgil A. Lacy, III, Metairie, Marc E. Devenport, Kenner, Brian C. Bossier, Blue Williams, Metairie; Gary A. Lee, Lee, Futrell & Perles; Madeleine Fischer, New Orleans, Leon Gary, Jr., Baton Rouge, Judith V. Windhorst, Jones Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans; Samuel M. Rosamond, III, Fleming & Rosamond, Metairie; Tyson B. Shofstahl, Rebecca A. Bush, Sharon R. Rodi, Stefini W. Salles, Adams & Reese, New Orleans; Philip J. Borne, Joseph M. Guillot, Christovich & Kearney; Susan B. Kohn, George J. Rizzo, Simon, Peragine, Smith & Redfearn; Angela M. Bowlin, James H. Brown, Jr., John J. Hainkel, III, Christine S. Tenley, Frilot, Partridge, Kohnke & Clements, New Orleans; John Cosmich, Richard L. Forman, Forrest R. Wilkes, Cynthia L. Tolbert, Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS; Carl J. Hebert, John A. Kopfinger, Jr., Evans & Company, New Orleans; Jacob J. Amato, Jr., Robert G. Creely, Stephen C. Grefer, Gretna, Frank J. Swarr, New Orleans, Mickey P. Landry, Baton Rouge, Amato & Creely, Gretna; Troy A. Broussard, Lafayette, Patrick D. McMurtray, Luker, Sibal & McMurtray; Gordon P. Wilson, Lugenbuhl, Burke, Wheaton, Peck & Rankin, New Orleans; James L. Fletcher, Jr., Thomas G. Milazzo, LeBlanc, Miranda & Delaup, Metairie; Kaye N. Courington, Deborah E. Lonker, Duncan & Courington; Lisa N. Sibal, Rodi W. Culotta, Glenn B. Adams, James S. Thompson, Robert F. Lakey, Jr., James E. Johnson, Robert S. Emmett, Edwin A. Ellinghausen, III, Porteous, Hainkel, Johnson & Sarpy; Troy N. Bell, Glenn L.M. Swetman, Robert P. Vining, Thomas W. Tyner, Aultman, Tyner, Ruffin & Yarbrough; C. William Bradley, Jr., Dwight C. Paulsen, III, Lawrence J. Hand, Jr., Richard E. Gruner, Jr., Lemle Kelleher, New Orleans; Jacob J. Amato, Jr., Gretna, Edward J. Castaing, Jr., Jonathan M. Herman, Edward J. Lilly, William L. Crull, III, Eric Shuman, New Orleans, William L. Brockman, Robert A. Knight, Eugene M. McEachin, Jr., Metairie, Mark W. Verret, Dawn M. Palmisano, Stephen N. Elliott, New Orleans, Bernard Cassisa, Elliott & Davis; Jerald L. Album, Metairie, James F. d'Entremont, New Orleans, Album Stovall, Radecker & Giordano; Robert H. Cooper, Michael D. Harold, Blue Williams, Metairie; Dennis M. La-Borde, James P. Magee, New Orleans, Andrew D. Benton, Charles H. Braud, Jr., Baton Rouge, Richard P. Ieyoub, Attorney General, Counsel for Respondent.
F. Charles McMains, Jr., Baton Rouge, Counsel for F. Charles McMains, Jr. Member of House (Amicus Curiae).
John J. Hainkel, Jr., New Orleans, Counsel for John Hainkel Jr. (Amicus Curiae).
Maureen N. Harbourt, Charles S. McCowan, Jr., Megan E. Lapari, M. Dwayne Johnson, Baton Rouge, Counsel for Louisiana Chemical Assn. (Amicus Curiae).
Roger D. Allen, Timothy F. Burr, Larry G. Canada, New Orleans, Counsel for Cooper T. Smith Stevedoring Co. Inc. (Amicus Curiae).
Dale D. Smith, Slidell, The Casino Assn. of La. (Amicus Curiae).
Bernard E. Boudreaux, Jr., New Iberia, Kimberly Wooten, Baton Rouge, Counsel for Mike Foster, Governor (Amicus Curiae).
*1254 Sam A. LeBlanc, III, New Orleans, Counsel for Central La. Chamber of Commerce, and Business Council of Jefferson Par., Greater Shreveport Chamber of Commerce (Amici Curiae).
Tyson B. Shofstahl, New Orleans, Counsel for American Chemistry Council (Amicus Curiae).
Jane Raiford, Sam A. LeBlanc, III, New Orleans, Counsel for Business Council of New Orleans (Amicus Curiae).
Dwight C. Paulsen, III, David E. Redmann, Jr., New Orleans, Counsel for Theodore A. Aucoin, Jr., William E. Crates, Ronald R. McHaney, Marvin Scheunemann (Amici Curiae).
James M. Garner, Keith A. Kornman, New Orleans, Counsel for Century Indemnity Co. (Amicus Curiae).
KIMBALL, Justice.
In this case we are faced with the issue of whether the legislature's amendment of La. C.C. art. 2315 by Act 989 of 1999, essentially purporting to "overrule" this court's decision in Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98), 716 So.2d 355, which recognized that the reasonable cost of medical monitoring is a compensable item of damage under Article 2315 provided that certain criteria are satisfied, can be constitutionally applied to the original Bourgeois plaintiffs. For the reasons that follow, we conclude that application of Act 989 to plaintiffs' suit would impermissibly divest them of a vested right in their causes of action. The trial court's judgment, insofar as it declared Act 989 unconstitutional as applied to plaintiffs' causes of action, is therefore affirmed.

FACTS AND PROCEDURAL HISTORY
On January 23, 1996, plaintiffs, current and former employees of Avondale Industries, Inc., filed a suit seeking medical monitoring damages on behalf of themselves and a class of those persons similarly situated who allegedly were exposed to asbestos-containing products, but have not filed suit for an asbestos-related injury or disease. Named as defendants in the suit are various executive officers of Avondale, several manufacturers, sellers and suppliers of asbestos and asbestos-containing products used at Avondale, and various insurers.[1] In response to plaintiffs' petition, defendants filed exceptions of no cause of action for medical monitoring expenses. The trial court sustained defendants' exceptions, and the court of appeal affirmed the trial court's judgment. This court granted certiorari and reversed the judgment of the court of appeal in Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98), 716 So.2d 355 (Bourgeois I). The narrow issue presented for our review in that case was "whether asymptomatic plaintiffs, who have had significant occupational exposure to asbestos and must now bear the expense of periodic medical examinations to monitor the effects of that exposure *1255 have suffered `damage' under Louisiana Civil Code article 2315." Id. at p. 3, 716 So.2d at 357. After considering the issue, we held that the reasonable cost of medical monitoring is a compensable item of damage under Civil Code article 2315, provided that certain specific criteria are satisfied.[2] This court specifically noted that "[r]ecognition of a plaintiff's need for medical monitoring does not create a new tort." Id. at p. 11 n. 15, 716 So.2d at 361 n. 15. The case was remanded to the district court to permit plaintiffs the opportunity to amend their petition to allege facts sufficient to state a cause of action. Plaintiffs filed an amended petition on September 11, 1998.
Subsequently, the legislature amended La. C.C. art. 2315 to eliminate medical monitoring as a compensable item of damage in the absence of a manifest physical or mental injury or disease. Effective July 9, 1999, Acts 1999, No. 989 amended Article 2315 to include the following highlighted language:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.

(Emphasis added).
Additionally, Section 2 of the Act provides:
The provisions of this Act are interpretative of Civil Code Article 2315 and are intended to explain its original intent, notwithstanding the contrary interpretation given in Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98); 716 So.2d 355, and all cases consistent therewith.
Furthermore, Section 3 of the Act states:
The provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date.
Subsequent to the effective date of the amendment, defendants filed exceptions of no cause of action, asserting that plaintiffs do not have a cause of action for medical monitoring because they do not exhibit "a *1256 manifest physical or mental injury or disease" as required by the newly-amended version of La. C.C. art. 2315. In response, plaintiffs filed a "Motion to Declare Act 989 Unconstitutional Insofar As It Is Purported to Apply to Plaintiffs' Causes of Action," contending that application of Act 989 to their claims would divest them of vested rights in their causes of action acquired prior to the statute's effective date. Defendants opposed the motion, arguing that Act 989 is interpretive legislation and could therefore be applied retroactively.[3]
After a hearing on defendants' exceptions of no cause of action and plaintiffs' motion to declare Act 989 unconstitutional, the trial court overruled defendants' exceptions of no cause of action and declared Act 989 unconstitutional as it applies to plaintiffs' causes of action.[4] In oral reasons for judgment, the trial court stated that substantive rights are affected by the amendment to La. C.C. art. 2315 and, therefore, the statute could not be applied retroactively to the Bourgeois plaintiffs.
Defendants appealed directly to this court pursuant to La. Const. art. V, § 5(D).[5]

LAW AND DISCUSSION
As previously mentioned, the issue presented in this case is whether the amendment to La. C.C. art. 2315, providing that "[d]amages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease," can be applied to plaintiffs' suit seeking recovery of medical monitoring expenses. Plaintiffs contend that such a retroactive application of Act 989 would unconstitutionally divest them of their vested right to assert a medical monitoring cause of action recognized in this court's decision in Bourgeois I. Defendants, on the other hand, along with several amici curiae who have filed briefs in support of defendants, argue that because Act 989 is an interpretive provision which does not divest any vested rights of plaintiffs since their cause of action has not yet accrued, it can be applied retroactively to plaintiffs' suit.
The sources of law are legislation and custom. La. C.C. art. 1. Legislation is a solemn expression of legislative will. La. C.C. art. 2. In Louisiana, as in all codified systems, legislation is the superior source of law which cannot be abrogated by custom. La. C.C. art. 1, comments (a) and (c); La. C.C. art. 3. The legislative power of the state is vested in the legislature. *1257 La. Const. art. III, § 1. In its exercise of the entire legislative power of the state, the legislature may enact any legislation not prohibited by the state constitution. Board of Com'rs of Orleans Levee Dist. v. Department of Natural Resources, 496 So.2d 281, 286 (La.1986) (on rehearing). The legislature is therefore free, within constitutional confines, to give its enactments retroactive effect. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992).
When determining whether a statute should be applied retroactively, a court must defer to the legislature's intent. La. C.C. art. 6; Reichert v. State, Dep't of Transp. & Dev., 96-1419, p. 6 (La.5/20/97), 694 So.2d 193, 199 ("Initially, a court must defer to legislative intent when determining whether a statute should be applied prospectively or retroactively."); Stelly v. Overhead Door Co. of Baton Rouge, 94-0569, p. 7 (La.12/8/94), 646 So.2d 905, 911 ("When determining whether a statute should apply retrospectively, courts are initially required to ascertain the legislature's intent regarding the retrospective or prospective application of the statute."). Article 6, entitled "Retroactivity of laws," provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.[6]
This court has interpreted this provision to require a two-fold inquiry:
First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive.
Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992); St. Paul Fire & Marine, 609 So.2d at 816. The principle contained in La. C.C. art. 6, however, has constitutional implications under the Due Process and Contract Clauses of both the United States and Louisiana Constitutions, such that even where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. See Keith v. U.S. Fid. & Guar. Co., 96-2075, p. 6 (La.5/9/97), 694 So.2d 180, 183; Rousselle v. Plaquemines Parish Sch. Bd., 93-1916, p. 11 (La.2/28/94), 633 So.2d 1235, 1244; Segura v. Frank, 93-1271, pp. 8-9 (La.1/14/94), 630 So.2d 714, 721; St. Paul Fire & Marine, 609 So.2d at 816 n. 11; Lott v. Haley, 370 So.2d 521, 523 (La.1979). See also 2 *1258 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, § 10 (3d ed. 1991) ("Retroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligation of contracts or in divestiture of vested rights.").
The first step under Article 6, determining whether the legislature expressly provided for retroactive application, is resolved by examining the specific language contained in the Act. St. Paul Fire & Marine, 609 So.2d at 816-17. Act 989 contains a definite legislative expression of its intended temporal effect. Section 3 of the Act provides that its provisions "shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date." This Section clearly and unmistakably evidences the legislature's intent that this Act be applied both retroactively and prospectively.[7] Plaintiffs' claims were pending, i.e., "subject to judicial scrutiny," see Segura v. Frank, 93-1271 at p. 19, 630 So.2d at 727, on July 9, 1999, the effective date of the Act. We must therefore conclude the legislature intended that Act 989 be applied to plaintiffs' claims. Thus, Act 989 will be applied to plaintiffs' claims unless retroactive application would violate the constitutional prohibitions against impairment of contractual obligations or disturbance of vested rights.
Because we can determine the legislature's intent regarding retroactive application of Act 989, the Article 6 inquiry is at an end. In the briefs filed in this court by the parties and numerous amici curiae, much has been made of the legislature's declaration in Section 2 that the provisions of Act 989 are interpretive and "intended to explain its original intent, notwithstanding the contrary interpretation given in [Bourgeois I ]." The briefs go on to exhaustively argue whether the provisions of Act 989 are interpretive or substantive. An analysis of whether an enactment is substantive, procedural or interpretive is necessary only in the event that the legislature's intent regarding retroactive application of a particular provision cannot be determined. This is because a classification of a law as substantive, procedural or interpretive is used only to determine whether the legislature would have desired only prospective or both prospective and retroactive application of an enactment. Because we know in this case that the legislature intended retroactive application of Act 989, it would be an exercise in futility to classify the law as either substantive or interpretive.[8]
The legislature's power to enact retroactive laws is limited by the Due Process *1259 and Contract Clauses of the Federal and State Constitutions. U.S. Const. amend. XIV, § 1; U.S. Const. art. I, § 10[1]; La. Const. art. I, § 2; La. Const. art. 1, § 23. See also Segura, 93-1271 at p. 19-20, 630 So.2d at 728, and cases cited therein. Plaintiffs contend retroactive application of Act 989 to their claims would contravene due process guarantees by divesting them of their vested rights in their causes of action which accrued prior to the prior to the effective date of the Act. We agree.
When a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process. Walls v. American Optical Corp., 98-0455, p. 8 (La.9/8/99), 740 So.2d 1262, 1268. See also Cole, 599 So.2d at 1063; Crier v. Whitecloud, 496 So.2d 305, 308 (La.1986); Faucheaux v. Alton Ochsner Medical Found. Hosp. & Clinic, 470 So.2d 878, 878-79 (La.1985); Lott, 370 So.2d at 524; Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381, 1387 (La.1978). Thus, a cause of action, once accrued, cannot be divested by subsequent legislation. See e.g. Faucheaux, 470 So.2d at 879 ("The statutes enacted after the acquisition of such a vested property right ... cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties."); Terrebonne v. South Lafourche Tidal Control Levee Dist., 445 So.2d 1221, 1224 (La.1984) ("This vested right could not be impaired by subsequent legislation. The Legislature simply cannot take away an existing cause of action based upon substantive rights which had clearly been granted by legislation during the preceding session and had become vested on the effective date of the legislation."); Favrot v. Parish of East Baton Rouge, 34 La. Ann. 491 (La.1882) ("[P]laintiff cannot be deprived of his [vested] right by mere legislative action."). Under Louisiana law, a cause of action accrues when a party has the right to sue. Falgout v. Dealers Truck Equip. Co., 98-3150, p. 12 (La.10/19/99), 748 So.2d 399, 407 ("When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees."); Prejean v. Dixie Lloyds Ins. Co., 94-2979, p. 3 (La.9/15/95), 660 So.2d 836, 837 ("In Louisiana, a cause of action accrues when a party has a right to sue."); Cole, 599 So.2d at 1063 n. 15 ("Under Louisiana law, a cause of action accrues when the party has the right to sue."). We must therefore determine whether plaintiffs had an accrued cause of action, i.e., the right to sue, prior to the effective date of Act 989.
In Bourgeois I, this court recognized the existence of a cause of action for medical monitoring under Louisiana law and set forth the criteria plaintiffs must satisfy to recover medical monitoring damages. This recognition did not create a new tort. See Bourgeois I, 97-3188 at p. *1260 11 n. 15, 716 So.2d at 361 n. 15. Rather, it established what La. C.C. art. 2315 encompassed prior to this court's decision in Bourgeois I. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 216, 115 S.Ct. 1447, 1451, 131 L.Ed.2d 328 (1995) ("[A] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.") (quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994)). The judicial power of the state is constitutionally vested in the courts. La. Const. Art. 5, § 1. Statutory interpretation and the construction to be given to legislative acts is a matter of law and rests with the judicial branch of the government. Cole Miers Post 3619 V.F.W. of DeRidder v. State, Dept. of Revenue & Taxation, 99-2215, p. 3 (La.1/19/2000), 765 So.2d 312, 314; In re: Louisiana Health Serv. & Indem. Co., 98-3034, p. 11 (La.10/19/99), 749 So.2d 610, 616; State ex rel. A.M., 98-2752, p. 2 (La.7/2/99), 739 So.2d 188, 190; Touchard v. Williams, 617 So.2d 885, 888 (La.1993); State Licensing Bd. for Contractors v. State Civil Serv. Comm'n, 240 La. 331, 123 So.2d 76, 78 (La.1960). It has long been established that "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 1 Cranch 137, 177, 5 U.S. 137, 2 L.Ed. 60, 73 (1803). While it is undeniably true that "[t]he decisions of our state courts do not create or eliminate substantive rights as this is the proper function of the legislature," Tullier v. Tullier, 464 So.2d 278, 282 (La.1985), when this court interprets legislative acts, it is giving meaning in particular cases to what the legislature has enacted as law; it is saying what the law is.[9] Thus, prior to the effective date of Act 989, La. C.C. art. 2315 included the reasonable cost of medical monitoring as a compensable item of damage for asymptomatic plaintiffs.
Because a cause of action for medical monitoring of asymptomatic plaintiffs existed prior to the effective date of Act 989, plaintiffs have a vested right to assert their causes of action for medical monitoring if those rights accrued prior to July 9, 1999. A cause of action, for purposes of the peremptory exception, "means the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant." Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238 (La.1993). The existence of the seven factors enunciated in Bourgeois I are the "operative facts which give rise to the plaintiff[s'] right to judicially assert the action against the defendant." Plaintiffs' causes of action therefore accrued, and they had a right to sue for medical monitoring damages, upon the convergence of the seven factors articulated in Bourgeois I. In the instant case, the trial court has yet to make a determination of whether plaintiffs' amended petition states a cause of action under the parameters of our opinion in Bourgeois I.[10] However, plaintiffs' amended petition alleging *1261 the occurrence of the seven criteria necessary to establish a need for medical monitoring was filed on September 11, 1998. Obviously, then, the alleged convergence of the factors must have occurred prior to July 9, 1999, and plaintiffs have a vested property right in their accrued causes of action which cannot constitutionally be divested by Act 989.
The judgment of the trial court regarding the constitutionality of Act 989 must therefore be affirmed.[11]
In the trial court, several defendants argued that plaintiffs' exclusive remedy in this case is found under workers' compensation law and the LHWCA. The trial court's judgment on this issue states that "plaintiff's causes of action are not barred by any worker's compensation statutes." Having disposed of the constitutional issue presented in this appeal, we decline to address the non-constitutional issues raised by defendants and transfer the case to the fifth circuit court of appeal for it to consider those issues.

DECREE
The judgment of the district court declaring Act 989 unconstitutional as applied to plaintiffs' claims is affirmed; the case is transferred to the fifth circuit court of appeal for it to address the remaining, non-constitutional issues raised by the parties in this appeal.
JUDGMENT AS TO CONSTITUTIONAL ISSUE AFFIRMED; CASE TRANSFERRED TO THE LOUISIANA FIFTH CIRCUIT COURT OF APPEAL.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
LEMMON, J., Subscribing to the Opinion and Assigning Additional Reasons.
True interpretive legislation occurs when the Legislature, upon realizing that a previously enacted law contains an ambiguity or an error, amends the prior law to correct the ambiguity or error before the law has been judicially interpreted.[1] However, after the judicial branch performs its constitutional function of interpreting a law, and the Legislature disagrees with that interpretation, a new legislative enactment is a substantive change in the law and is not an interpretive law, because the original law as interpreted by the judicial branch, no longer applies.[2]
NOTES
[1] On December 21, 2000, counsel for Armstrong World Industries filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay indicating that on December 6, 2000, Nitram Liquidators, Inc., Desseaux Corporation of North America, and Armstrong World Industries, Inc. each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy court for the District of Delaware. Because Armstrong World Industries, Inc. is a defendant in this appeal, the effect of this opinion is stayed as to that debtor pursuant to section 362(a) of the Bankruptcy Code pending further orders of the federal court.
[2] This court held that a plaintiff who satisfies the following criteria has proven his or her need for medical monitoring:

(1) Significant exposure to a proven hazardous substance.
(2) As a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.
(3) Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease.
(4) A monitoring procedure exists that makes the early detection of the disease possible.
(5) The monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles.
(6) The prescribed monitoring regime is different from that normally recommended in the absence of exposure.
(7) There is some demonstrated clinical value in the early detection and diagnosis of the disease.
[3] Several defendants also argued that the case could be resolved on non-constitutional grounds because the precise relief sought by plaintiffs is available under workers' compensation law and the LHWCA. Defendants contended that "plaintiffs seek nothing more than compensation benefits in the context of a tort suit." The trial court's judgment simply states that "plaintiff's causes of action are not barred by any worker's compensation statutes."
[4] A hearing in this matter was originally held on October 20, 1999 and concluded with the trial court's ruling overruling the defendants' exceptions of no cause of action. However, the case was reargued on January 5, 2000 because, according to the trial court, "the Louisiana Attorney general was not a party to the action." The Attorney General was present at the January 5, 2000 hearing. After the second hearing, the trial court signed a judgment declaring Act 989 unconstitutional as it applies to plaintiffs' case for the reasons assigned in open court on October 20, 1999.
[5] La. Const. art. V, § 5(D) provides that a case shall be appealable to the supreme court if a law or ordinance has been declared unconstitutional.
[6] A related statute is La. R.S. 1:2, which provides:

No Section of the Revised Statutes is retroactive unless it is expressly so stated.
This statute, unlike Article 6, does not distinguish between substantive, procedural and interpretive laws. However, the jurisprudence has consistently construed the two provisions as being co-extensive, with La. R.S. 1:2 being limited to apply only to substantive legislation. Keith v. U.S. Fid. & Guar. Co., 96-2075, p. 5 (La.5/9/97), 694 So.2d 180, 183; Manuel v. Louisiana Sheriff's Risk Mgmt. Fund, 95-0406, p. 8 (La. 11/27/95), 664 So.2d 81, 86; Segura v. Frank, 93-1271, p. 8 n. 16 (La.1/14/94), 630 So.2d 714, 721 n. 16; Rousselle v. Plaquemines Parish Sch. Bd., 93-1916, p. 11 (La.2/28/94), 633 So.2d 1235, 1244; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992). A consideration of La. R.S. 1:2 is not necessary in this case, however, because we are not addressing the temporal effect of an amendment to a section of the Revised Statutes, but are instead addressing such effect of an amendment to a Civil Code article.
[7] In Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, this court began its analysis with a formula set out by Planiol for identifying the only two situations in which a law operates retroactively. In that case, such an analysis was necessary because the legislature had not expressed an intent as to the temporal effect to be given the amendment at issue.
[8] We do note, however, the compelling logic of then-Justice Dennis' concurring opinion in St. Paul Fire & Marine in which he stated:

Under our system of government with limited powers, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 1 Cranch 175 [137], 177, 2 L.Ed. 60 (1803) (Marshall, C.J.). Within the judicial department, this court is the final arbiter of the meaning of the state constitution and laws. Therefore, after this court has said what a law means, legislative action adopting a different meaning necessarily effects a change and not an interpretation of that law.
609 So.2d at 822. Planiol also cautions against the lawmaker misusing his right of interpretation "in giving the name of `interpretive law' to laws which contain new provisions." 1 M. PLANIOL, TREATISE ON THE CIVIL LAW, § 251 (La.St.L.Inst.Trans.1959). See also St. Paul Fire & Marine, 609 So.2d at 819 ("Of course, it is a different matter when the legislature actually amends previously enacted legislation by laws designated as interpretive. This again may be an improper exercise of power tending to attribute, contrary to constitutional guarantees, retroactive effect to new legislation.") (quoting Yiannopoulos, Validity of Patents Covering Navigable Waterbottoms Act 62 of 1912, Price, Carter and All That, 32 La.L.Rev. 1, 16 (1971)).
[9] Defendants and several amici curiae, quoting this court's decision in Norton v. Crescent City Ice Mfg. Co., Inc., 178 La. 135, 150 So. 855, 858 (1933), argue that "the decisions of a court of last resort are not the law, but only the evidence of what the court thinks is the law." This statement is true to the extent that it means decisions of this court do not create the law. However, as explained above, when this court interprets a legislative act, it is exercising its constitutionally derived judicial power and stating what the law, as enacted by the legislature, is.
[10] Of course, the question of whether plaintiffs can make sufficient allegations to support a cause of action under Bourgeois I and recover damages is not before us. This issue is wholly separate from the constitutional issue of whether the legislature may enact legislation divesting a cause of action which is based on facts arising prior to the effective date of the legislation.
[11] We do not hold that Act 989 itself is unconstitutional. Rather, we hold that retroactive application of Act 989 unconstitutionally divests plaintiffs of their vested property right in their causes of action which accrued prior to the effective date of the Act.
[1] As the majority notes, a basic tenet in constitutional separation of powers, since the decision in Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60, 73 (1803), is that interpretation of laws is emphatically a judicial branch function.
[2] "The usual purpose of a special interpretive statute is to correct a judicial interpretation of a prior law which the legislature considers inaccurate. When such statutes are given any effect, the effect is prospective only. Any other result would make the legislature a court of last resort...." 1A Norman J. Singer, Sutherland Statutory Construction § 27.04 (5th ed. 1993).