994 So.2d 85 (2008)
Mary SLAVICH, Anthony Slavich, Jr., Sam D. Slavich, Terri S. Slavich, and A.J.S., Inc.
v.
The STATE of Louisiana, Through the DEPARTMENT OF WILDLIFE AND FISHERIES.
No. 2007 CA 1149.
Court of Appeal of Louisiana, First Circuit.
August 21, 2008.
*86 Thomas B. Calvert, Metairie, Louisiana, for Plaintiffs/Appellants, Maty Slavich, et al.
Charles C. Foti, Jr., Attorney General, by Andrew Wilson, Special Assistant Attorney General, James A. Burton, Susan F. Clade, Shawn L. Holahan, New Orleans, Louisiana, Frederick C. Whitrock, Donald E. Puckett, Baton Rouge, Louisiana, for Defendant/Appellant, State of Louisiana, through the Department of Wildlife and Fisheries.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
The plaintiffs, Mary Slavich, Anthony Slavich, Jr., Sam D. Slavich, Terri S. Slavich, and A.J.S., Inc., and the defendant, State of Louisiana through the Department of Wildlife and Fisheries (DWF), each appeal the trial court judgment granting the plaintiffs' motion for partial summary judgment and denying DWF's motion for summary judgment. For the following reasons, we reverse and render.

FACTS AND PROCEDURAL HISTORY
The plaintiffs held leases on certain state water bottoms for the purpose of *87 cultivating and harvesting oysters. The leases granted the plaintiffs the exclusive right to harvest oysters on the leased premises. In 1989, in an effort to save Louisiana's valuable coastal wetlands, the legislature enacted the Louisiana Coastal Wetlands Conservation and Restoration Act. In connection therewith, the state of Louisiana set up various fresh water diversion projects. The plaintiffs filed suit on May 11, 1995, alleging that they were adversely affected as a result of these projects, making their leases unsuitable for oyster harvesting and substantially depriving them of their livelihood. The plaintiffs asserted that DWF had breached its obligations to maintain the leased premises in a condition such as to serve the use for which it was leased and to maintain the lessees in peaceful possession of the leased premises, entitling plaintiffs to damages for their economic losses.
On May 15, 2001, DWF filed a motion for partial summary judgment, contending that many of the plaintiffs' leases contained hold harmless and indemnity provisions, requiring the plaintiffs, as oyster lessees, to hold the state harmless for any damages caused by fresh water diversion or other actions taken for the purpose of preservation and restoration of the state's coastland wetlands and resources. In response thereto, the plaintiffs filed a supplemental and amending petition, in which they alleged that the Secretary of DWF (Secretary) exceeded his legislative authority and violated the Louisiana Constitution by placing the hold harmless and indemnity clauses in the documents for the renewal of plaintiffs' oyster leases. Further, the plaintiffs asserted that LSA-R.S. 49:214.5 and 56:427.1, statutes enacted after the filing of the plaintiffs' original petition and which require that the state be held harmless for damages caused by coastal restoration projects, could not be applied retroactively, as retroactive application would impair the plaintiffs' contractual rights and divest them of their vested rights. On June 28, 2001, the plaintiffs filed their own motion for partial summary judgment making these assertions regarding the hold harmless provisions and the unconstitutionality of the retroactive application of these statutes. On August 7, 2001, the trial court granted DWF's motion, denied the plaintiffs' motion, and dismissed the case with prejudice.
The plaintiffs appealed. On December 20, 2002, finding that the trial court failed to consider the constitutional issues raised by the plaintiffs, this court vacated the judgment and remanded the matter for consideration of these issues.[1]
In February 2004, the plaintiffs and DWF again filed motions for summary judgment raising the same issues as in their earlier summary judgment motions. The motions were heard on May 17, 2004, and on June 11, 2004, the trial court granted the plaintiffs' motion for partial summary judgment and denied DWF's motion for summary judgment. The trial court judgment specifically decreed that:
1. The "hold harmless" and/or indemnity clauses within the lease forms do not form contracts of adhesion;
2. The "hold harmless" and/or indemnity clauses do not violate Louisiana Civil Code Article 2004;
3. The Secretary of the Louisiana Department of Wildlife and Fisheries did not exceed his legislative authority and did not violate the Constitution by placing "hold harmless" *88 and/or indemnity clauses in the oyster lease forms issued to the plaintiffs;
4. Louisiana Revised Statutes 49:214.5 and 56:427.1 do not violate the constitutional prohibition against special laws found in the Louisiana Constitution at Article III, Section 12(A)(3);
5. Louisiana Revised Statute 49:214.5 and the "hold harmless" and/or indemnity clauses can be applied to the case sub judice, even if the constitutional amendment was not passed until after the statute or after the "hold harmless" and/or indemnity clauses were added to the contracts, for the constitutional amendment cured any and all defects;
6. Applying Louisiana Revised Statutes 49:214.5 and 56:427.1 retroactively to this case would not impair the plaintiffs' contractual rights in violation of the contract clauses of the State and the Federal Constitutions;
7. Applying Louisiana Revised Statutes 49:214.5 and 56:427.1 retroactively to this case would divest the plaintiffs of their vested rights in violation of the due process clauses of the State and Federal Constitutions;
8. Since Louisiana Revised Statutes 49:214.5 and 56:427.1 cannot be applied retroactively in this case, as the statutes would divest the plaintiffs of their vested rights, neither can the amended Louisiana Constitution Article XII, Section 10(C) be applied retroactively;
9. Since the amended Louisiana Constitution Article XII, Section 10(C) cannot be applied retroactively in this matter, it cannot cure the defects in the "hold harmless" and/or indemnity clauses that were added to the contracts of the case sub judice before the State could even legally immunize itself from suit and liability in contract;
10. The "hold harmless" and/or indemnity clauses in the contracts at issue in this case are therefore unenforceable; and
11. The statutes at issue cannot be applied retroactively to the case sub judice.

The plaintiffs and DWF each sought writs with this court.
While the parties' writ applications were pending in this court, the supreme court rendered its decision in Avenal v. State, 03-3521 (La.10/19/04), 886 So.2d 1085, cert. denied, Avenal v. Louisiana, 544 U.S. 1049, 125 S.Ct. 2305, 161 L.Ed.2d 1090 (2005), a case that also involved hold harmless clauses in oyster leases. Thereafter, on February 24, 2005, on supervisory review, a different panel of this court vacated the June 11, 2004 judgment and remanded the matter to the trial court for reconsideration in light of the supreme court's decision in Avenal.[2] Further, in granting DWF's writ application, which sought a review of the trial court's ruling that found that hold harmless clauses contained in the plaintiffs' leases unenforceable, this court noted the supreme court's controlling decision in Avenal, which recognized the enforceability of the hold harmless clauses inserted in all oyster leases beginning in 1989. This court further stated that "[t]o the extent the trial court's judgment found *89 these hold harmless clauses unenforceable, it was in error." The plaintiffs requested a rehearing, which was denied, as was an application for writs to the supreme court.
Following this second remand, cross-motions for summary judgment were again filed and briefed, and were heard on April 30, 2007. At the conclusion of the hearing, the trial court again granted the plaintiffs' motion for partial summary judgment and denied DWF's motion for summary judgment for the same reasons as set forth in its June 11, 2004 judgment. Judgment was signed on May 25, 2007. The plaintiffs and DWF have both appealed.[3]

ASSIGNMENTS OF ERROR
On appeal, the plaintiffs assign the following as error:
1. The trial court erred in concluding that the hold harmless and indemnity clause within the lease forms did not form a contract of adhesion.
2. The trial court erred in finding the hold harmless and indemnity clauses did not violate LSA-C.C. art. 2004.
3. The trial court erred in concluding that the Secretary of the Department of Wildlife and Fisheries did not violate the constitution by placing the hold harmless and indemnity clauses in the oyster lease forms issued to the plaintiffs.
4. The trial court erred in concluding that LSA-R.S. 49:214.5 and 56:427.1 did not violate constitutional provisions against special laws found in LSA-Const. art. III, § 12(A)(3).
5. The trial court erred in concluding that LSA-R.S. 49:214.5 and the hold harmless and indemnity clauses can be applied to the case sub judice, even if the constitutional amendment was not passed until after the hold harmless and/or indemnity clauses were added to the contracts, for the constitutional amendment cured any and all defects.
6. The trial court erred in concluding that in applying LSA-R.S. 49:214.5 and 56:427.1 retroactively to this case would not impair plaintiffs' contractual rights in violation of the contract clauses of the state and federal constitutions on the evidence presented by the state.
In its answer to the appeal, DWF raises the following assignments of error:
1. The trial court failed to properly apply the controlling elements of the supreme court's Avenal decision.
2. The trial court erred in finding that the plaintiffs' vested rights were disturbed or that they were divested of same in violation of the due process clauses of the Louisiana and United States constitutions.
3; The trial court erred in finding that amended Louisiana Constitution Art. XII, § 10(C) could not be applied retroactively.
4. The trial court erred in finding that LSA-R.S. 49:214.5 and 56:427.1 could not be applied retroactively.
5. The trial court erred in finding that the hold harmless and/or indemnity *90 clauses in the plaintiffs' leases were unenforceable.

SUMMARY JUDGMENT
Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Duplantis v. Dillard's Dept. Store, 02-0852, p. 5 (La.App. 1 Cir. 5/9/03), 849 So.2d 675, 679, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Dickerson v. Piccadilly Restaurants, Inc., 99-2633, pp. 3-4 (La. App. 1 Cir. 12/22/00), 785 So.2d 842, 844.

DISCUSSION
The leasing of state-owned water bottoms to private parties for the purpose of oyster farming is governed exclusively by a specific statutory scheme. In order to foster, cultivate, and protect the Louisiana oyster industry, the state has statutorily authorized the issuance of oyster leases to private parties. Accordingly, LSA-R.S. 41:1225 authorizes DWF to grant leases on state-owned water bottoms for oyster cultivation, bedding, and harvesting, and matters relating thereto, as provided in Subpart D of Part VII of Chapter 1 of Title 56 of the Louisiana Revised States of 1950. LSA-R.S. 41:1225; LSA-R.S. 56:4. All oyster leases issued on state water bottoms are governed exclusively by this statutory scheme. LSA-R.S. 56:424. Louisiana Revised Statutes 56:425 provides that the Secretary of DWF may only lease this state's water bottoms and natural reefs in the water bottoms of this state to a resident, a firm composed of residents, or a corporation domiciled in Louisiana or organized under this state's laws. The Secretary's right to grant oyster leases is likewise contingent upon a determination that the state owns the water bottoms to be leased, and that the lessee agrees as a matter of contract that he will operate under Louisiana laws and pursuant to DWF's rules and regulations. LSA-R.S. 56:425(A), (B). All leases begin on the date the lease is signed and continue for a fifteen-year period. LSA-R.S. 56:428(A). Louisiana Revised Statutes 56:425(C) recognizes that the Secretary may "make such stipulations in the leases made by him as he deems necessary and proper to develop the [oyster] industry" provided that the clauses are consistent with the statutory provisions of Subpart D. Avenal, 03-3521, pp. 13-14, 886 So.2d at 1095-96.
In their petition, plaintiffs identify forty-one leases that were granted to them by the state. Of the forty-one, seventeen were signed after 1989. The state has presented evidence that of the twenty-four remaining, fourteen of the leases were renewed between 1996 and 2000.[4] The plaintiffs have presented no evidence regarding *91 the remaining ten lease agreements and there is nothing in the record regarding them; thus, we do not consider same.
In Avenal, the Louisiana Supreme Court held that hold harmless clauses in leases containing the 1989 indemnity clause "are legally valid and clearly enforceable under the authority granted to the DWF in La. R.S. 56:425(C)." Avenal, 03-3521 at pp. 23-24, 886 So.2d at 1102. Also, in this matter, this court previously determined that "[t]o the extent the trial court's judgment found these hold harmless clauses unenforceable, it was in error." Slavich v. State, 2004 CW 1806 (La.App. 1 Cir. 2/24/05).
Nevertheless, the plaintiffs argue that Avenal did not address whether the Secretary of DWF, prior to 1995, when the first hold harmless statute was enacted, could have put the hold harmless clauses in the leases. We disagree. The Avenal court clearly stated that the Secretary had such authority under LSA-R.S. 56:425(C):
We find that they are legally valid and clearly enforceable under the authority granted the DWF in La. R.S. 56:425(C). No further legislative authority was needed to validate these indemnity clauses, and we therefore have no need to delve into the possible retroactivity of the subsequent statutes which mandate the inclusion of these clauses into oyster leases. (Emphasis added.)
Avenal, 03-3521 at pp. 23-24, 886 So.2d at 1102.
Therefore, the plaintiffs' claims covered by the seventeen leases signed after 1989 are invalid, as the plaintiffs filed these claims in 1995 after the indemnity clauses were already in effect. See Avenal, 03-3521 at p. 24, 886 So.2d at 1102. Additionally, with regard to the fourteen leases that were renewed between 1996 and 2000, any claims after the renewal dates are invalid by virtue of the hold harmless clauses and the more detailed indemnity clauses inserted in all oyster leases after 1995. Thus, following the supreme court's decision in Avenal, the only possible claims that plaintiffs might have are from the time the Caernarvon fresh water diversion structure became operational in September 1991 until the lease renewal dates, between April 26, 1996 and February 21, 2000. See Avenal, 03-3521 a p. 24, 886 So.2d at 1102.
The plaintiffs filed their lawsuit in May 1995. However, the first "hold harmless" statute, in which the legislature required that the state be held harmless regarding its coastal restoration efforts, was not effective until July 1, 1995, when LSA-R.S. 49:214.5 was amended.[5] The statute required an indemnity clause in oyster leases and required that the state be held harmless. Additionally, Section 2 of Acts 1995, No. 936, specifically provided that the act was intended to be remedial in *92 nature and retroactive. Subsequently, in 2000, LSA-R.S. 56:427.1 was enacted, specific to oyster leases, and included similar indemnity and hold harmless language.[6] This statute also provided that it was remedial in nature and was to be applied retroactively.
Despite specific language by the legislature regarding the retroactivity of these statutes, the plaintiffs assert that the retroactive application of LSA-R.S. 49:214.5 and 56:427.1 in the present case would be unconstitutional. They contend that the constitutional amendment giving the legislature the authority to limit the state's liability was not passed until after the hold harmless and indemnity clauses had already been added to the oyster lease contracts at issue herein. According to the plaintiffs, the state could not limit its liability in tort or contract until LSA-Const. Art. XII, Sec. 10 was amended.[7] Therefore, the plaintiffs assert that retroactive application of LSA-R.S. 49:214.5 and 56:427.1 would result in an unconstitutional impairment of their contractual and vested rights.
The trial court agreed with the plaintiffs in part. Using the four-step *93 analysis of Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, the trial court initially determined that the retroactive application of LSA-R.S. 49:214.5 and 56:427.1 created no contractual impairment of a constitutional dimension, was justified by a significant and legitimate purpose, and was reasonable and appropriate for the public policy of coastal restoration, which justified the retroactive application of LSA-R.S. 49:214.5 and 56:427.1 with regard to the plaintiffs' contractual rights. Thus, the trial court concluded that the statutes, as applied retroactively, did not impair the plaintiffs' contractual rights in violation of the contract clauses of the state or federal constitutions. We agree with this conclusion reached by the trial court.
However, the trial court further determined that the plaintiffs' vested rights in their cause of action were disturbed by the retroactive application of LSA-R.S. 49:214.5 and 56:427.1 in violation of the due process clauses of the state and federal constitutions. The trial court reasoned that "the plaintiffs, at the time they filed suit, had a vested property interest in the peaceful possession of the leased premises and had a clear right and interest to use the property for the purpose for which it was intended." The court further determined that at that time the state could not immunize itself from suit and liability in contract and that plaintiffs' right to sue had already vested when LSA-R.S. 49:214.5 and 56:427.1 were enacted. The trial court concluded that because the statutes could not be applied retroactively, the constitutional amendment could not be applied retroactively, and because the constitutional amendment could not be applied retroactively, it could not cure the defects in the hold harmless and indemnity clauses that were added to the oyster leases in this matter before the state could legally immunize itself from suit and liability in contract. In this regard, we believe the trial court erred.
The legislature's power to enact retroactive laws is limited by the due process and contract clauses of the federal and state constitutions. Bourgeois v. A.P. Green Indus., Inc., 00-1528, p. 9 (La.4/3/01), 783 So.2d 1251, 1258-59; Segura, 93-1271 at pp. 19-20, 630 So.2d at 728. When a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process. Bourgeois, 00-1528 at p. 9, 783 So.2d at 1259; Walls v. American Optical Corp., 98-0455, p. 8 (La.9/8/99), 740 So.2d 1262, 1268. Under Louisiana law, a cause of action accrues when a party has the right to sue. Bourgeois, 00-1528 at p. 10, 783 So.2d at 1259. The plaintiffs contend retroactive application of LSA-R.S. 49:214.5 and 56:427.1 to their claims would contravene due process guarantees by divesting them of their vested rights in their cause of action, which accrued prior to the effective date of the statutes and prior to the amendment the state constitution. We must therefore determine whether plaintiffs had an accrued cause of action prior to the effective dates of LSA-R.S. 49:214.5 and 56:427.1.
DWF has consistently maintained that the plaintiffs do not have a cause of action as they were not divested of any vested rights. Specifically, DWF asserts that since the plaintiffs did not allege an action in negligence, but rather filed suit based upon a breach of implied contractual warranties, the plaintiffs' rights are only those given by statute.
In their petition, the plaintiffs asserted that the state breached its "affirmative obligation to maintain the leased premises in a condition such as to serve the use for which it was hired" and the *94 warranty of "peaceful possession of the leased premises." The trial court agreed with the plaintiffs, concluding that "the plaintiffs, at the time they filed suit, had a vested property interest in the peaceful possession of the leased premises and had a clear right and interest to use the property for the purpose for which it was intended." We disagree.[8]
The Avenal court clearly recognized that "the statutory laws relative to the leasing of water bottoms for oyster production differ from the provisions that govern ordinary conventional leases addressed in Title IX of Book II of the Civil Code, La. C.C. art. 2668, et seq."[9]Avenal, 03-3521 at p. 19, 886 So.2d at 1099. The Avenal decision makes it clear that oyster leases are governed "exclusively by a specific statutory scheme" and "all oyster leases issued on State water bottoms are governed exclusively by this statutory scheme." Avenal, 03-3521 at p. 13, 886 So.2d at 1095.
Thus, the property rights of an oyster lessee are exclusively defined in LSA-R.S. 56:423, which, prior to its amendment in 2006, provided, in pertinent part:
A. A lessee shall enjoy the exclusive use of the water bottoms leased and of all oysters and cultch grown or placed thereon, subject to the restrictions and regulations of this subpart.
B. (1) A lessee of oyster beds or grounds who has obtained, recorded and marked his lease in compliance with the law shall have the right to maintain an action for damages against any person, partnership, corporation or other entity causing wrongful or negligent injury or damage to the beds or grounds under lease to such lessee.
The Avenal court was clear in its pronouncements regarding these rights and stated:
Further, the oyster fishermen's right of exclusive use of the water bottoms was not taken as, in spite of Caernarvon, no other private party can use these bottoms to fish for oysters. In addition, their exclusive right to oysters and cultch thereon was not taken as no other private party can enter that lease and extract oysters or cultch. The changes in salinity of the water resulting from Caernarvon affected neither of these rights. As one court commented, "[t]he plaintiffs retained the use of their leaseholds, it was not the plaintiffs who were ousted by [Caernarvon], but the oysters."
Plaintiffs claim, however, that what was taken was their right to profitably harvest oysters from these waters because the salinity levels will prohibit this if Caernarvon is run at its full capacity as expected. Indeed, the court of appeal agreed and found that Caernarvon constituted a taking because it "rendered the plaintiffs' oyster leases permanently useless for commercial oyster production." However, this somehow assumes that the State intended to guarantee each lessee a commercially viable oyster lease. La. R.S. 56:423 never mentions nor suggests that lessees are *95 entitled to profits. Further, the oyster statutes do not guarantee the oyster lessees with a vested right to an optimal salinity regime in the State's own waters, nor that the state maintain a certain salinity regime favorable for oyster cultivation. (Citations omitted.)
Avenal, 03-3521 at p. 30, 886 So.2d at 1106.
Similarly, in this matter, the oyster lessees' right of exclusive use of the water bottoms was not taken, nor was the exclusive right to the oysters and cultch grown or placed thereon. The plaintiffs have never asserted that they were denied these limited statutory rights. Instead, they contend that they were divested of rights that simply were never given to them. As Avenal clearly held, the oyster statutes do not guarantee oyster lessees with a vested right to an optimal salinity regime for oyster cultivation. Further, the rights granted in LSA-R.S. 56:423(B) have never been recognized as anything other than rights granted against third parties to the leases, such as oil companies, not against the state. Avenal, 03-3521 at pp. 21-22, 886 So.2d at 1100.[10]
Thus, finding no constitutional prohibition to the retroactive application of LSA-R.S. 49:214.5 and 56:427.1, the plaintiffs' claims must fall. Accordingly, based on our de novo review of the record, we conclude that the trial court erred in granting summary judgment in favor of the plaintiffs and in denying DWF's motion for summary judgment. The plaintiffs' claims with regard to the seventeen oyster leases signed after 1989 are invalid because they contained valid and enforceable hold harmless clauses. Any claims with regard to the remaining leases that were signed before any hold harmless and indemnity clauses were included therein must also fail because of the retroactive application of LSA-R.S. 49:214.5 and 56:427.1. We reverse the judgment of the trial court and grant summary judgment in favor of DWF dismissing the plaintiffs' claims.

CONCLUSION
For the above reasons, we reverse the judgment of the trial court. Additionally, we deny the plaintiffs' motion for summary judgment and grant summary judgment in favor of the defendant, DWF, dismissing the plaintiffs' claims with prejudice. All costs of this appeal are assessed to the plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] The panel on appeal included Judge Parro and pro tempore Judges Clayton James and Michael Patterson.
[2] See Slavich v. State, 2004 CW 1806 (La.App. 1 Cir. 2/24/05) (unpublished writ action). The panel involved in these writ applications included Judges Whipple, Downing, and Hughes.
[3] On April 25, 2008, this court issued an order requiring the parties to show cause why the appeal should not be dismissed for lack of appropriate decretal language. On May 9, 2008, the trial court signed an Amended Judgment. Because the amended judgment still lacked decretal language and because the amended judgment failed to contain the certification as a final judgment under LSA-C.C.P. art. 1915(B), which had been included in the previous judgment, this court again issued a rule to show cause order. The appeal was maintained after the second amended judgment was signed on June 5, 2008, and filed in the record.
[4] Three of the fourteen leases show no evidence of being signed. However, pursuant to LSA-R.S. 56:428(B), the Secretary has sixty days from the date of expiration of a lease to execute a renewal lease. If a renewal lease is not executed within this sixty-day period, the lease is automatically renewed.
[5] In 1995, LSA-R.S. 49:214.5, as amended, provided:

A. Notwithstanding any other law to the contrary, the state of Louisiana, its political subdivisions, and its agents or employees shall be held tree and harmless from any claims for loss or damages to rights arising under any lease, permit, or license granted to any individual or other entity for any purpose on state lands or waterbottoms from diversions of freshwater or sediment, depositing of dredged or other materials or any other actions, taken for the purpose of management, preservation, enhancement, creation or restoration of coastal wetlands, waterbottoms or related renewable resources.
B. All departments, agencies, boards, or commissions of the state of Louisiana and its political subdivisions shall include language which shall hold the state and its political subdivisions harmless for the purposes set out in this Section in all leases, permits, or licenses granted to any individual or other entity after July 1, 1995.
[6] LSA-R.S. 56:427.1 provided:

A. Notwithstanding any other law to the contrary, the state of Louisiana, its political subdivisions, and its agents or employees shall be held free and harmless from any claims for loss or damages to rights arising under any oyster lease, renewal, or extension granted to any individual or other entity for any purpose from diversions of fresh water or sediment, depositing of dredged or other materials, or any other actions taken for the purpose of management, preservation, enhancement, creation, or restoration of coastal wetlands and from impacts associated with projects authorized and defined under the state's Coastal Wetlands Conservation and Restoration Plan.
B. AH departments, agencies, boards, or commissions of the state of Louisiana and its political subdivisions shall include language which shall hold the state and its political subdivisions harmless for the purposes set out in this Section in all oyster leases, renewals, or extensions granted to any individual or other entity after July 1, 1995.
[7] LSA-Const. Art. XII, Sec. 10 provides:

(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
An amendment, effective November 23, 1995, rewrote paragraph (C) which formerly read:
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
[8] We note that the plaintiffs, as well as the trial court, seem to have confused the distinctions between contractual indemnity clauses and statutes of immunity. However, since we find no violation of vested rights of the plaintiffs and therefore no accrued cause of action herein, we need not address this issue.
[9] LSA-C.C. art. 2682 provides:

The lessor is bound:
(1) To deliver the thing to the lessee;
(2) To maintain the thing in a condition suitable for the purpose of which it was leased; and
(3) To protect the lessee's peaceful possession for the duration of the Lease.
[10] By Acts 2006, No. 425, § 1, eff. June 15, 2006, LSA-R.S. 56:423(B) was amended to add the sentence:

However, no lessee shall have any right to maintain any action against the state, any political subdivision of the state, the United States, or any agency, agent, contractor, or employee thereof for any claim arising from any project, plan, act, or activity in relation to coastal protection, conservation, or restoration, except as provided in R.S. 56:427.1.
Further, Section 3 of Act No. 425 provided that "[i]t is the express intent of the legislature that this Act is interpretive, curative, and procedural and shall be applied both prospectively and retroactively."