# Supreme Court of Louisiana

The Opinions handed down on the **27th day of January, 2016**, are as follows:

**BY JOHNSON, C.J.**:

2015-C -1298    STATE OF LOUISIANA v. LYNN E. FORET, M.D. (Parish of E. Baton Rouge)

For the above and foregoing reasons, the portions of the July 8, 2014 judgment of the trial court that (1) dismissed all of the State's causes of action filed pursuant to the Sledge Jeansonne Act, and (2) dismissed the State's causes of action under the Unfair Trade Practices Act for activities occurring prior to June 2, 2006, are hereby affirmed. This matter is remanded for further proceedings consistent with the views expressed herein. AFFIRMED.

GUIDRY, J., concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-1298

STATE OF LOUISIANA

VERSUS

LYNN E. FORET, M.D.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**JOHNSON, Chief Justice**

We granted certiorari to determine whether the Sledge Jeansonne Louisiana Insurance Fraud Prevention Act,[1] and the Louisiana Unfair Trade Practice and Consumer Protection Act,[2] can be applied retroactively to defendant's criminal misconduct which occurred prior to the effective dates of these statutes. We hold that both the Sledge Jeansonne Act and Louisiana Unfair Trade Practice and Consumer Protection Act operate prospectively only, applying to causes of action arising after the effective date of each Act. For the reasons stated herein, we affirm the court of appeal ruling finding that the statutes at issue cannot be retroactively applied to this defendant's past criminal conduct.

**FACTS AND PROCEDURAL HISTORY**

On April 18, 2013, defendant, Lynn Foret, a medical doctor who specialized in orthopedic surgery, pled guilty in federal court to one count of health care fraud,[3] for criminal acts that occurred between 2003 and 2009. The bill of information states the

---

[1] LSA-R.S. 22:1931 *et seq.*

[2] LSA-R.S. 51:1401 *et seq.*

[3] U.S.C. § 1347

1

date of medical service as February 4, 2009 and notes that Medicare paid reimbursement on March 6, 2009. The Stipulated Factual Basis for Dr. Foret's guilty plea describes a scheme to defraud Medicare, Medicaid, and insurance law whereby Dr. Foret routinely treated patients with lower cost steroid knee injections while fraudulently billing for the more costly Hyalgan injections. Dr. Foret then sought reimbursements from Medicare, Medicaid and private insurance companies totaling $9,48,249.11.

On August 1, 2012, approximately, eight months prior to Dr. Foret's guilty plea, the Sledge Jeansonne Louisiana Insurance Fraud Prevention Act (the Act) took effect. The act provided the State Attorney General with the authority to bring a civil action for penalties against "a person who has entered a plea of guilty … to criminal conduct arising out of circumstances which would constitute a violation of Revised Statute 22:1924," which governs insurance fraud.[4]

The Louisiana Attorney General filed a civil suit on May 31, 2013, seeking actual damages, civil fines in the amount of $5,000.00 to $10,000.00 per violation, and penalties of three times the amount pursued under the Sledge Jeansonne Act which became effective on August 1, 2012. The State requested forfeiture of any property derived from any gross proceeds connected to Dr. Foret's criminal misconduct, and recovery of all costs and fees incurred in the investigation and prosecution. The State also pursued civil monetary penalties under the Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA) for violations of Louisiana Revised Statute 51:1405. LUTPA was amended June 2, 2006 to allow the State Attorney General to seek penalties for unlawful, unfair, methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

---

[4] La. R.S. 22:1931.5

In response to the State's action, Dr. Foret filed three declinatory exceptions alleging: (1) impermissible retroactive application of the Sledge Jeansonne Act to criminal misconduct committed prior to the effective date of the Act; (2) impermissible retroactive application of LUTPA as to any alleged violations of LUTPA before the effective date of the amendment to LUTPA allowing the State Attorney General to seek penalties for a violation; and (3) improper venue, which was disposed of in a prior application to this Court. Dr. Foret also filed a dilatory exception of vagueness and ambiguity.[5]

On October 21, 2013, a hearing was held on the exceptions. The trial court granted Dr. Foret's declinatory exceptions, dismissing with prejudice, the State's action for penalties under the Sledge Jeansonne Act and dismissed with prejudice causes of action under the Louisiana Unfair Trade Practices Act. The trial court deferred ruling on the dilatory exception of vagueness and ambiguity.

The court of appeal affirmed the trial court's rulings,[6] finding that the conduct regulated by the substantive statute was the underlying fraud, rather than the subsequent guilty plea. Therefore, even though the State's cause of action may not have accrued until Dr. Foret pled guilty, application of the Acts nonetheless attached new consequences to his criminal misconduct, which occurred before the Acts became effective. Judge Higginbotham dissented, reasoning the plain language of the

---

[5] The State sought to appeal directly to this Court, contending that "[t]he trial court's judgment involved a decision that certain laws of the state of Louisiana are unconstitutional" and, therefore, that the Louisiana Supreme Court has original jurisdiction. This Court noted that while the trial court's oral reasons "indicate its decision to sustain the exception may have been based on constitutional grounds," there was no declaration of unconstitutionality in the trial court's judgment. Accordingly, this Court found no basis to exercise its appellate jurisdiction and transferred the appeal. *See State v. Foret*, 2014-0257 (La. 3/14/14), 136 So. 3d 792 (per curiam). In a later per curiam, this Court found that venue was proper in East Baton Rouge Parish, and ordered the court of appeal to examine the substantive issues contested in the instant writ application. *See State v. Foret*, 2014-2123 (La. 1/16/15), 155 So. 3d 514, & 2014-2097 (La. 1/16/15), 156 So. 3d 43).

[6] *State of Louisiana v. Foret,* 174 So. 3d 7002014-0419 (La. App. 1 Cir. 6/5/15).

Sledge Jeansonne Act demonstrates it is the guilty plea that gives the State Attorney General the authority to act, not the criminal activity, and because the guilty plea was entered after the effective date of the statute, its application herein would be prospective, not retroactive. The State applied to this Court for review, and argues that the Sledge Jeansonne Act is not an impermissible retroactive application of the law.

## DISCUSSION

By Act 2012, No. 862, § 1, the Louisiana Legislature enacted the Sledge Jeansonne Act to grant the Louisiana Attorney General and his assistants, as agents of the State, "the ability, authority, and resources to pursue civil monetary penalties, liquidated damages, or other remedies to protect the integrity of the insurance industry from persons who engage in fraud, misrepresentation, abuse, or other illegal practices ... in order to obtain payments to which these insurance providers or persons are not entitled."[7] In furtherance of this stated purpose, Louisiana Revised Statute 22:1931.3 authorizes the State Attorney General to bring a civil action in the Nineteenth Judicial District Court "to seek recovery from any person or persons who violate any provision of Louisiana Revised Statute 22:1924," which governs insurance fraud.

The Sledge Jeansonne Act sets forth the burden of proof in Louisiana Revised Statute 22:1931.4, providing that the burden of proof shall be a preponderance of the evidence, and that "[p]roof by a preponderance of the evidence of a violation of Louisiana Revised Statute 22:1924 shall be deemed to exist if the defendant has pled guilty ... in any federal ... court when such charge arises out of circumstances which would be a violation of Louisiana Revised Statute 22:1924." The Act grants the State Attorney General the right to seek a civil monetary penalty against, among others, "[a]

_____

[7] LSA-R.S. 22:1931(A).

4

person who has entered a plea of guilty ... in federal ... [court] of criminal conduct arising out of circumstances which would constitute a violation of Revised Statute 22:1924."[8]

The Sledge Jeansonne Act became effective on August 1, 2012, nearly three years after Dr. Foret's last act of criminal misconduct, but approximately eight months before Dr. Foret entered his guilty plea. These facts call into question whether the State, through the State Attorney General, may rely upon the provisions of the Act to seek damages and penalties against Dr. Foret for misconduct that occurred prior to the enactment of the Act. The State also pursued penalties under the Louisiana Unfair Trade Practices and Consumer Protection Law which was amended on June 2, 2006 to allow the State Attorney General to seek penalties for violations of LUTPA.

The State argues that the express language of Louisiana Revised Statute 22:1931.5(4) of the Sledge Jeansonne Act specifically authorizes the State Attorney General to seek a civil monetary penalty based on a defendant's plea of guilty which was made after the effective date of the Act, but postdates the underlying criminal misconduct arising out of circumstances which would constitute a violation of Louisiana Revised Statute 22:1924. Relying on *Walls v. American Optical Corporation*,[9] the State reasons that there is no impermissible retroactive application of the Act in this instance since the plain language of the Act demonstrates that it is the guilty plea, not the antecedent criminal misconduct, that actually gives rise to the State Attorney General's right of action, and, thus, the application of the Act, based on Dr. Foret's guilty plea is prospective, not retroactive. We disagree.

It is well settled that legislatures can pass laws that limit a person's rights based

---

[8] LSA-R.S. 22:1931.5(4).

[9] 98-0455 (La. 9/8/99), 740 So. 2d 1262.

on past criminal convictions.[10] In *Hawker v. People of New York,[11]* the United States Supreme Court held that there was no ex post facto issue when a state statute prohibited the practice of medicine by a person with a past conviction, even though this consequence was not contemplated at the time of the conviction. Subsequent cases have held that other such consequences, including mandatory deportation, present no ex post facto problem.[12] Notwithstanding the fact that immigration consequences are broadly deemed as "collateral" to a conviction, the Supreme Court's 2001 decision in *I.N.S. v. St. Cyr[13]* recognized that changes in the consequences of a conviction can constitute a "new legal consequence" that cannot be imposed retroactively without clear congressional intent.[14]

In federal criminal cases, retroactive effect is measured from the date of criminal conduct.[15] Many courts have interpreted *St. Cyr* to mandate that for a law to have a retroactive effect on those with past convictions, the conviction must arise from a plea, and the plea agreement must have predated the change in the laws."[16] In *Johnson v.*

---

[10] *See, e.g., Bugajewitz v. Adams*, 228 U.S. 585, 608-09 (1913) (upholding a law that provided for the deportation of a women convicted of prostitution); *Hawker v. New York*, 170 U.S. 189, 199-200 (1898) (upholding a public health law which prohibited a person convicted of a felony from practicing medicine).

[11] 170 U.S. 189, 199-200 (1898).

[12] *See, e.g., Marcello v. Bonds*, 349 U.S. 302, 314 (1955); *Bugajewitz*, 228 U.S. at 592.

[13] 533 U.S. 289 (2001).

[14] *Id.* at 321.

[15] *See*, e.g., *Johnson v. United States*, 529 U.S. 694, 701-02 (2000) (applying the "clear statement" rule to conclude that a change in the terms of supervised release does not apply to cases in which the initial offense is before the effective date of the new law); *Miller v. Florida*, 482 U.S. 423, 435-36 (1987) (applying Ex Post Facto Clause to conclude that a change in sentencing guidelines does not apply to those whose crimes occurred prior to the new guidelines).

[16] *See Dias v. I.N.S.*, 311 F. 3d 456, 458 (1st Cir. 2002) (per curiam); *Chambers v. Reno*, 307 F. 3d 284, 290-91 (4th Cir. 2002); *Perez v. Elwood*, 294 F. 3d 552, 559-60 (3d Cir. 2002); *Armendariz-Montoya v. Sonchik*, 291 F. 3d 1116, 1121 (9th Cir. 2002); *Domond v. I.N.S.*, 244 F. 3d 81, 86 (2d Cir. 2001); *DiSanto v. I.N.S.*, No. Civ. 4239, 2001 U.S. Dist. LEXIS 21763, at 12 (S.D.N.Y. Dec. 31, 2001); *Lawrence v. I.N.S.*, No. Civ. 2154, 2001 U.S. Dist. LEXIS 10058, at 7-9 (S.D.N.Y. July 20, 2001),

*United States*,[17] the Supreme Court confronted the question of whether a new law imposing sanctions following a revocation of supervised release could be applied to a defendant whose conduct preceded the change in the law.[18] The change in the law post-dated the defendant's initial offense and conviction, but pre-dated the conduct that led to the revocation of his supervised release.[19] A unanimous court ruled that, under the presumption against retroactive application of new statutes, the new law should be read as applying only to those persons whose initial offense occurred after the effective date of the new law.[20] The Court reasoned that the revocation system affects possible punishment for the initial offense and no new scheme can be retroactively applied to a person whose conviction is based on conduct that pre-dated the change in the law.[21]

Likewise, courts have examined the retroactive application of new sentencing guidelines to past criminal misconduct. In *Miller v. Florida*,[22] the issue before the court was whether new sentencing guidelines could be applied to a defendant's past criminal misconduct.[23] The defendant's criminal offense took place in April 1984; the sentencing guidelines were proposed in May 1984 and adopted in July 1984. The defendant was convicted in August 1984, and was sentenced in October 1984.[24] The

---

affd sub. nom, *Rankine v. Reno*, 319 F. 3d 93, 99-100 (2d Cir. 2003).

[17] 529 U.S. 694, 702 (2000).

[18] *Id*. at 696.

[19] *Id.* at 697-99.

[20] *Id.* at 702.

[21] *Id.* at 700-01.

[22] 482 U.S. 423 (1987).

[23] *Id.* at 424-25.

[24] *Id.* at 426-27.

government argued that it was sufficient that the defendant knew the guidelines at the time of sentencing, and that he knew at the time of his offense that he would be sentenced under whatever guidelines were in effect at the time of his sentencing.[25] The Court concluded that the new guidelines were more onerous than those in effect at the time the criminal offense took place, and therefore, applying the new guidelines to defendant would result in an impermissible retroactive effect.[26]

The federal courts' treatment of issues involving retroactive application of laws in cases involving criminal conduct has a long history. *Lindsey v. Washington,*[27] is a case that concerned a change in sentencing that changed the prior maximum penalty and made it a mandatory penalty.[28] *Lindsey* involved a retroactive application of a new mandatory deportation rule-changing a maximum penalty into a mandatory penalty.[29] In *Lindsey*, the defendant committed his crime in April 1935.[30] Several months later, but before the government initiated its prosecution, the sentencing law changed.[31] The Court held that it would be an impermissible retroactive effect for Lindsey to be subjected to a more onerous sentencing scheme other than the one in effect at the time of his crime.[32]

When examining the retroactive application of statutes, a court must first determine whether the legislature expressed an intent concerning the retroactive or

---

[25]  *Id.* at 430-31.

[26]  *Id.* at 431-32.

[27]  301 U.S. 397 (1937).

[28]  *Id.* at 399.

[29]  *Id.* at 398-99.

[30]  *State v. Lindsey*, 61 P. 2d 293, 294 (Wash. 1936), rev'd, 301 U.S. at 398.

[31]  *See Lindsey,* 301 U.S. at 398.

[32]  *Id.* at 401.

prospective application of the law, and if the legislature did express such an intent, the inquiry is at an end, but if no intent is expressed by the legislature, then that intent must be discerned by classifying the law as either substantive, procedural, or interpretive.[33] Where it is determined that the legislature intended retroactive application of a new statute, an analysis of whether the retroactive application of the statute violates the Due Process and Contract Clauses of the Federal and State Constitutions must follow.[34]

A review of the legislative history of the Sledge Jeansonne Act, and LUPTA reveal that there is no clear expression of legislative intent as to the retroactive application of these laws. Louisiana Revised Statute 1:2 provides that "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated,"[35] and has been interpreted to apply solely to substantive legislation.[36] Louisiana Civil Code Article 6 provides that "[i]n the absence of contrary legislation, substantive laws apply prospectively only. "Substantive laws," for purposes of determining whether a law should be applied retroactively, are those which establish new rules, rights, and duties, or change existing ones.[37]

The challenge of distinguishing retroactive from prospective operation of a statute "is not always a simple or mechanical task."[38] When confronted with this issue,

---

[33]  LSA–C.C. art. 6, LSA–R.S. 1:2.

[34]  U.S.C.A. Const. Art. 1, § 10, cl. 1; U.S.C.A. Const. Amend. 14; LSA–Const. Art. 1, §§ 2, 23; LSA–C.C. art. 6; LSA–R.S. 1:2.

[35]  *See* LSA-C.C. art. 6 (stating that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only").

[36]  *Church Mutual Insurance Company v. Dardar*, 2013-2351 (La. 5/7/14), 145 So. 3d 271, 279, n. 9.

[37]  *Anderson v. Avondale Industries, Inc.*, 2000-2799 (La.10/16/01), 798 So. 2d 93, 97.

[38]  *Landgraf v. USI Film Products*, 511 U.S. 244, 269, at 268, 114 S. Ct. 1483, 1499, 128 L. Ed. 2d 229, 254 (1994).

this Court adopted the rule offered by Marcel Planiol, author of a Treatise on the Civil Law, stating:

> In his treatise, Planiol sets out the formula for identifying the only two situations in which a law operates retroactively:
>
> > [A] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity.[39]

The Court of Appeal in the instant matter analyzed *Walls v. American Optical Corp.*,[40] and recognized the difficulty of determining whether a statute can be applied to a cause of action . . . "like the instant case, where some operative facts predated the enactment and others occurred after the statute's effective date."[41] In *Walls*, this Court relied upon the Planiol formula to find that application of a new law is improper when it: (1) goes back to the past either to evaluate the conditions of the legality of an act; or (2) modifies or suppresses the effects of a right already acquired.[42] In such situations, Planiol observes that a law becomes "retroactive" and violates the rules requiring substantive laws to apply prospectively only. This Court held that application of a 1976 amendment of LSA-R.S. 23:1031 (which granted tort immunity to executive officers) to a wrongful death action where exposure predated the statute, but where the resulting death occurred after the effective date of the statute, did not result in retroactive application because the amendment focused on the status of an

---

[39] 1 M. Planiol, *Treatise on the Civil Law*, § 243 (La. St. L. Inst.Trans.1959) (emphasis added); *See also Palomeque v. Prudhomme*, 95-0725, p. 9 (La.11/27/95), 664 So. 2d 88, 94, n. 9. *Id.* at p. 5, 740 So. 2d at 1267.

[40] 98-0455 (La. 9/8/99), 740 So. 2d 1262.

[41] *See State of Louisiana v. Foret,* 174 So. 3d 7002014-0419 (La. App. 1 Cir. 6/5/15).

[42] *Id* at p.13 citing *Walls*, 740 So. 2d at 1267; 1 M. Planiol, *Treatise on the Civil Law,* § 243 (La.St. L. Inst.Trans.1959).

individual rather than the conduct giving rise to a claim.

Further, in *Anderson v. Avondale Industries, Inc.*,[43] this Court explained that

*Walls* does not stand for the proposition that the accrual of a cause of action during

the time a law is in effect necessarily determines the law's application to the claim:

> Rather, what we adopt here today is a case by case approach to determine, in cases involving facts that span enough legislative sessions to allow for the innovation of the law, whether any intervening statute, if applied to that case, would operate retroactively. If the statute would operate retroactively under Planiol's definition, then, the two-fold analysis from La. C.C. Art. 6, with which all courts are familiar, must be made. Making the determination of when the cause of action arose for the various causes of action which might be asserted merely provides the temporal guidepost from which a court may determine whether the intervening statute operates retroactively or prospectively, and the consequences that flow from that determination will differ in each case.[44]

The facts of the instant case are analogous to the one presented in *Anderson*:

the Act impermissibly attached new consequences to past conduct, even though the

State's cause of action accrued after the Act became effective. Planiol writes: "If a law

is made which penalizes *an act* which up to that time was not punishable, *or if it*

*increases the penalty*, it cannot be applied to acts other than those committed after the

effective date of the new law."[45] Ultimately, whether or not an Act applies, turns upon

the legislative inquiry of whether the Act's focus is on a guilty plea or on Dr. Foret's

earlier acts of criminal misconduct which gave rise to it.

In cases such as *Walls*, where a new substantive law essentially extinguishes a

---

[43]  00-2799 (La. 10/16/01), 798 So. 2d 93.

[44]  [*Walls*] at 1271, n. 8.

[45]
1 M. Planiol, *Treatise on the Civil Law,* § 243 (La. St. L. Inst.Trans.1959) (discussing "Penal Offenses") (emphasis supplied).  Notably, the civil action provided to the Attorney General under the Act and LUPTA provides for collection of a civil penalty that can perhaps best be described as punitive.

cause of action, the date that the cause of action accrues is a crucial determining point in considering the second condition of retroactivity of Planiol's formula, i.e., whether the law modifies or suppresses the effects of a right already acquired. Once a cause of action accrues, a party has a vested right in the cause of action that a new substantive law cannot take away.[46] This Court explained:

> … Planiol's analysis for retroactivity does not stop with the protection of vested rights, it also prevents retroactive evaluation of the conditions of the legality of past conduct. Under Planiol's first situation in which a law operates retroactively, when a intervening new law creates a cause of action, and thus attaches new consequences to past events, the retroactivity event is the conduct or activity regulated.[47]

This Court concluded that the application of former Louisiana Civil Code Article 2315.3, which authorized punitive damages for specifically enumerated wanton or reckless behavior, to conduct occurring before the effective date of the article, violated this condition because it evaluated the conditions of the defendant's liability for its past conduct.

Analysis under the Planiol formula examining retroactivity addresses the protection of vested rights (i.e., the second prong of his analysis); it also prevents retroactive evaluation of the conditions of the legality of past conduct (the first prong of Planiol's analysis). Thus, under the first condition of Planiol's analysis as to whether a law applies or operates retroactively, "when a[n] intervening new law creates a cause of action, and thus attaches new consequences to past events, the retroactivity

---

[46] *See Bourgeois v. A.P. Green Indus., Inc.,* 00-1528 (La. 4/3/01), 783 So. 2d 1251 (holding that the Due Process clauses of the United States and Louisiana Constitutions prohibited the Legislature from retroactively abolishing a claim for medical monitoring to causes of action that accrued before the amendment to Article 2315 because the retroactive application of the amendment would divest the injured parties of their vested rights). *Anderson,* 00-2799 at p. 6, 798 So. 2d at 99.

[47] *Id.* at p. 6., 798 So. 2d at 99.

event is the conduct or activity regulated."[48] In *Anderson*, we used this analysis to determine that the application of former Louisiana Civil Code Article 2315.3 (authorizing punitive damages for wanton or reckless behavior in the storage, handling, or transportation of hazardous or toxic substances) to criminal misconduct that occurred prior to the effective date of the article, violated the first condition of retroactivity in Planiol's formula since it evaluated the conditions of the defendant's liability for its past conduct.[49]

This court last utilized the Planiol formula to determine whether a statute's application is impermissibly retroactive in *Church Mutual Insurance Company v. Dardar.*[50] The question before this Court was whether Louisiana Revised Statute 23:1203.1 applies to requests for medical treatment and/or disputes arising out of requests for medical treatment where the compensable accident or injury occurred prior to the effective date of the medical treatment schedule. This Court held that the applicable statute[51] is a procedural statute that does not operate retroactively to divest a claimant of vested rights; that although the process by which necessary medical care is requested and administered is changed by the enactment of the statute, implementation of the medical treatment schedule does not operate to deprive a claimant of the substantive right to necessary medical care. It is a procedural statute, and does not "go back to the past" to "modify or suppress the effects of a right already acquired" and, thus, does not operate retroactively.[52]

---

[48] *Anderson*, 798 So. 2d at 99.

[49] *Anderson*, 798 So. 2d at 100.

[50] 2013-2351 (La. 5/7/14), 145 So. 3d 271, 279.

[51] La. R.S. 23:1203.1

[52] *Id.*

Unlike the statute in question in the *Dardar* case,[53] the Sledge Jeansonne Act created the statutory right and authority of the Louisiana Attorney General to bring a civil action to collect damages and penalties against individuals who commit insurance fraud and is thus, clearly substantive law. Moreover, the legislature did not expressly provide that it should be applied retroactively.[54] The Act not only grants the State Attorney General a cause of action to seek redress for a party's fraudulent conduct, it also sets forth the burden of proof, and provides for damages and penalties that are the direct consequences of such fraudulent conduct.[55] Contrary to the State's argument, the conduct regulated by the Sledge Jeansonne Act is "criminal conduct" such as a person's act of "fraud, misrepresentation, abuse, or other illegal practices ... in order to obtain payments to which these ... persons are not entitled," not a subsequent guilty plea to such conduct.[56] Thus, application of the Sledge Jeansonne Act to Dr. Foret's criminal misconduct herein, which occurred before the effective date of the Act, would violate the first condition of retroactivity under Planiol's formula because it evaluates the conditions of Dr. Foret's liability for his past conduct. As such, application of the Sledge Jeansonne Act herein would result in an impermissible retroactive application of the law in violation of Louisiana Revised Statute 1:2.[57] Likewise the same reasoning applies to the application of provisions of LUTPA to Dr. Foret's acts of criminal misconduct which preceded the effective date of the relevant LUTPA amendment which allows the State Attorney General to seek penalties for

---

[53] *Id.*

[54]

*See Anderson*, 798 So. 2d at 97 (former LSA-C.C. art. 2315.3 was substantive, thus LSA-C.C. art. 6 required that it be given prospective application only).

[55] LSA-R.S. 22:1931 et seq.

[56] LSA-R.S. 22:1931.

[57] *See Anderson*, 798 So. 2d at 100.

unlawful, unfair, methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

## CONCLUSION

Accordingly, we conclude that the trial court correctly granted defendant's exception and dismissed the State's claims filed pursuant to the Sledge Jeansonne Act. We likewise find no error in the trial court's ruling regarding the limited applicability of the Unfair Trade Practices Act herein, i.e., that it can only apply to conduct that occurred after the June 2, 2006 amendment which allows the State Attorney General to seek penalties for unlawful, unfair, methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

For the above and foregoing reasons, the portions of the July 8, 2014 judgment of the trial court that (1) dismissed all of the State's causes of action filed pursuant to the Sledge Jeansonne Act, and (2) dismissed the State's causes of action under the Unfair Trade Practices Act for activities occurring prior to June 2, 2006, are hereby affirmed. This matter is remanded for further proceedings consistent with the views expressed herein.

**AFFIRMED.**

15

SUPREME COURT OF LOUISIANA

NO. 2015-C-1298

STATE OF LOUISIANA

VERSUS

LYNN E. FORET, M.D.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**GUIDRY, J., concurs and assigns reasons.**

I concur in the result of the majority opinion that affirms the court of appeal judgment, particularly with regard to the civil monetary penalties sought pursuant to La. Rev. Stat. 22:1931.6 and La. Rev. Stats. 22:1931.5(B) and (C), as well as the forfeiture provisions of La. Rev. Stat. 22:1931.12. I additionally concur in the affirmation of the lower courts' rulings with regard to the State's claims under the Louisiana Unfair Trade Practices Act prior to the effective date of the relevant provisions of that act. I write separately because I believe the State may be able to seek recovery for actual damages pursuant to La. Rev. Stat. 22:1931.5(A)(1), assuming such damages are properly pleaded and provable.

The defendant entered a plea of guilty in federal court to one count of violating 18 U.S.C. § 1347, which triggered a mandatory restitution order pursuant to 18 U.S.C. § 3663A. The corresponding state insurance fraud provision has a similar mandatory restitution requirement that includes "payment of restitution to the victim company of any insurance payments to the defendant that the court determines was [sic] not owed and the costs incurred by the victim company associated with the evaluation and defense of the fraudulent claim…." La. Rev. Stat. 22:1924(A)(1). The federal court in fact, as part of the defendant's plea agreement with the government, imposed restitution in the amount of $948,249.11,

1

and the defendant tendered a cashier's check to the registry of the court in that amount. One element of the charged offense in federal court was that the defendant knowingly executed or attempted to execute a scheme or plan to defraud health care benefit programs, which in the federal case were identified as Medicare, Medicaid, and private insurance companies. *See* 18 U.S.C. § 1347; *see also* State's Exhibit C (which includes the plea agreement, an affidavit of understanding of maximum penalty, a document advising the defendant of the elements of the offense, and a stipulated factual basis for the guilty plea). The "Stipulated Factual Basis for Guilty Plea" in fact notes the defendant "fraudulently received reimbursement from Medicare, Medicaid, and private insurance companies, totaling $948,249.11." Thus, on the face of the record before us, it appears the defendant made complete restitution to all health care benefit programs that were the victims of his fraudulent scheme.

However, it must be presumed the State is seeking recovery of damages against victims of the defendant's fraudulent scheme that were not included in the federal restitution order, because La. Rev. Stat. 22:1931.6(A)(1) clearly provides that "[a]ctual damages incurred as a result of a violation of the provisions of this Part shall be recovered only once by the insurer and shall not be waived by the court." The State has set forth the amount of damages allegedly incurred by each of 28 insurance companies, including affidavits from fraud investigators for two of those companies. The alleged damages total $478,838.69, according to the State's petition. But nowhere in its petition does the State allege the federal restitution order failed to include these 28 insurance companies, and as I noted above, it would appear from the State's petition and the documents filed in support thereof that the federally-ordered restitution amount included all damages against all victim insurance companies, as well as the Medicare and Medicaid  health care programs.

2

Had the State sufficiently pleaded this distinction, I believe the defendant's claim the State is seeking to apply the Sledge Jeansonne Act retroactively might not lie, because restitution was mandatory under both the federal and state insurance fraud statutes in effect at the time of the alleged fraudulent scheme. The guilty plea in federal court thus would have commenced the State's right to seek recovery under the Sledge Jeansonne Act of damages the State could have always recovered under La. Rev. Stat. 22:1294, the Act merely allowing the State the alternative of doing so based on the federal guilty plea. *See* La. Rev. Stat. 22:1931.4. However, in the absence of any specific allegations in the petition that the restitution ordered and paid in federal court did not encompass all of the damages resulting from the defendant's fraudulent scheme, I believe the majority correctly affirms the judgment of the court of appeal. I would, though, allow the State on return to the district court to amend its petition, if possible, to plead its entitlement to seek such damages.