DARLENE WEBBER

VERSUS

CONTINENTAL CASUALTY COMPANY AND
CRISTIAN P. SILVA LAW OFFICE, LLC

NO. 24-C-378

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Wiseman
First Deputy, Clerk of Court

February 11, 2025

Linda Wiseman
First Deputy Clerk

**IN RE** DARLENE WEBBER

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE DANYELLE M. TAYLOR, DIVISION "O", NUMBER 834-923

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and John J. Molaison, Jr.

## WRIT GRANTED, PARTIAL SUMMARY JUDGMENT REVERSED

This matter is before us on an application for supervisory writs filed herein by plaintiff-appellant, Darlene Webber ("Ms. Webber") from the judgment of the district court denying Ms. Webber's Motion for Partial Summary Judgment on the issue of whether La. R.S. 9:5605.2, which became effective July 1, 2022, is to be applied retroactively or prospectively only. La. R.S. 9:5605.2 provides that a plaintiff's damages in a legal malpractice action are limited to the maximum amount of damages the plaintiff could have collected in the underlying action but for the negligence of the attorney, commonly known as the "collectability rule."[1] For the reasons stated below, we grant Ms. Webber's application and hold that R.S. 9:5605.2

---

[1] The statute provides:

> In an action for damages by a client against an attorney, the client's recovery against the attorney shall be limited to the amount of damages which the attorney shows by a preponderance of the evidence would have been the maximum amount of damages that the client could have collected in the client's underlying action in which he was represented by the attorney.

24-C-378

may be applied only prospectively and does not apply to her cause of action which vested prior to the effective date of the statute.

## FACTS AND PROCEDURAL HISTORY

On November 11, 2019, Ms. Webber's husband was murdered, while standing on his lawn, by his next-door neighbor, Lawrence Sly, Sr. ("Sly"), who was arrested and charged in conjunction with the incident. On October 23, 2020, Ms. Webber retained Christian P. Silva and his law firm, Christian P. Silva Law Office, LLC (collectively, "Silva"), and William R. Penton, III ("Penton"), an attorney who, at the time, was employed by Silva, to file a wrongful death and survival action in conjunction with the death of her husband. Silva/Penton did not timely file the lawsuit on or before November 11, 2020, and Ms. Webber's claims prescribed.[2]

On June 22, 2022, Sly was convicted of second-degree murder (La. R.S. 14:30.1). Thereafter, Ms. Webber contacted Silva and/or Penton to inform him/them that she would be providing an impact statement at Sly's sentencing hearing, which was to be held on July 11, 2022. She was requested to stop by Silva's offices following her appearance at the sentencing hearing. It was at that point that Penton apparently realized that he had allowed Ms. Webber's claims to prescribe and so notified Silva.

As requested, Ms. Webber appeared at Silva's offices after the sentencing hearing and met with Silva, who informed her that her claim had not been timely filed and was therefore barred by prescription and that she had a right to file a malpractice claim against the firm. At that time, Silva presented Ms. Webber with a letter that he had prepared (the "Silva Letter") and asked her to sign it. Silva claimed in the letter that he had only just heard of Ms. Webber and her lawsuit, that Penton

---

[2] Penton was the attorney with whom Webber had her initial consultation on October 23, 2020, and who signed her as a client of the firm. Penton is covered under Silva's Malpractice Policy, as demonstrated in the Answer of Continental Casualty Company's ("Continental['s]") Sixth Affirmative Defense, set forth in its Answer (filed January 5, 2023) to Ms. Webber's Petition for Damages against Silva, Penton and Continental (filed November 11, 2022).

was not authorized to accept cases on behalf of the firm, that the engagement letter signed by Ms. Webber was not the firm's engagement letter and that there were numerous other irregularities in the procedures employed in purportedly signing Ms. Webber as a client and the paperwork retained by Penton. Silvia further stated in the Silva Letter that had he been aware of Ms. Webber's case, he would not have agreed to take it because there was insufficient time between the date Ms. Webber appeared at the firm seeking representation and the prescription date, and because the defendant was not a person of sufficient means to satisfy a judgment.

Ms. Webber refused to sign the Silva Letter and immediately retained counsel to file a legal malpractice action against Silva and Penton and their malpractice carrier, Continental Casualty Insurance Company ("Continental").[3] Ms. Webber's Petition for Damages (the "Petition") against Silva, Penton and Continental was filed on November 11, 2022. Continental answered the Petition on January 5, 2023, and Silva and Penton answered on January 19, 2023. Both Answers asserted an affirmative defense of lack of collectability under La. R.S. 9:5605.2.

Ms. Webber filed a Motion for Partial Summary Judgment on the Defense of Collectability on May 2, 2024, contending that when the legislature enacted R.S. 9:5605.2, which became effective July 1, 2022, it did not express whether it intended the statute to be retroactive and that, since R.S. 9:5605.2 represents a substantive change in the law, it cannot be applied retroactively. The defendants opposed the Motion for Partial Summary Judgment, arguing that, because Acts 2022, No. 285, expressly provides that the Act is intended to overrule the Louisiana Supreme Court's decision in *Ewing v. Westport Ins. Co.,* 20-339 (La. 11/19/2020), 315 So.3d

---

[3] There are inconsistencies in the facts as recited by Webber's counsel both in her district court pleadings and in her writ application. He states that Webber did not become aware of Silva's malpractice until July 19, 2022, but if, as stated, she met with Silva on July 11, and Silva presented her with the Silva Letter advising her of the failure to timely file suit, she would have been aware on July 11, 2022. She met with the D'Amico firm on July 18, 2022 to retain them to file a legal malpractice suit against Silva and Penton, but her attorney has represented that she was unaware of her claims against Silva and Penton until July 19, 2022.

175, the statute is interpretative or curative in nature and should be applied retroactively.

Ms. Webber's Motion for Partial Summary Judgment came on for hearing on July 9, 2024. After hearing the arguments of counsel, the district court ruled from the bench, denying the Motion for Partial Summary Judgment. The district court found that the statute is not substantive and therefore, applies retroactively and prospectively. The court reasoned that R.S. 9:5605.2 does not deprive Ms. Webber of any rights because she still has her claim for legal malpractice and still has to prove the elements of the legal malpractice claim, including her full damages. In that sense, according to the district court, the statute does not take anything from Ms. Webber; it only gives the Silva/Continental the right to assert an affirmative defense of lack of collectability in order to reduce Silva's obligation and it is his burden to so prove, if he can. Judgment denying Ms. Webber's Motion for Partial Summary Judgment was entered on July 15, 2024.

On August 8, 2024, Ms. Webber filed a Notice of Intent to Apply for Supervisory Writ, which was granted by the district court on August 12, 2024. Ms. Webber filed the instant Application for Supervisory Review of the Order Denying Plaintiff's Motion for Summary Judgment on the Issue of the Defense of Collectability under La. R.S. 9:5605.2 on August 16, 2024 (the "Application"). Silva filed an Opposition to the Application (the "Opposition") on September 13, 2024.

## ANALYSIS

This application presents the purely legal question whether La. R.S. 9:5605.2 affects substantive rights and applies prospectively only or if the statute is purely remedial and therefore applies retroactively and prospectively. If the statute applies retroactively, Ms. Webber's recovery against Silva in her underlying malpractice lawsuit will effectively be worthless, since Sly is incarcerated and serving a life

4

sentence. We have found no case addressing the issue of retroactivity of La. R.S. 9:5605.2. Thus, the issue presented is *res nova,* as was the issue presented to the Louisiana Supreme Court in *Ewing,* the case that the legislature sought to overturn by enacting La. R.S. 9:5605.2. Although *res nova,* we find that there is codal and statutory authority, as well as jurisprudence, sufficient to inform our ruling in this case. We begin our analysis with a discussion of *Ewing.*

**A. *Ewing***

Silva contends that because La. R.S. 9:5605.2 expressly overrules *Ewing*, the statute is remedial and applies retroactively. *Ewing* was a legal malpractice action in which the Louisiana Supreme Court was called upon to determine the *res nova* issue of whether a plaintiff's damages in a legal malpractice action "are limited to the amount she could have actually collected against the tortfeasor in the underlying lawsuit." 20-339 at p. 1; 315 So3d at 176. The Court found that proof of collectability is not a necessary element for a plaintiff to establish a claim for legal malpractice, "nor can collectability be asserted by an attorney as an affirmative defense in a legal malpractice action." *Id.*

In that case, as here, the attorney failed to timely file the client's lawsuit, resulting in the running of prescription and the loss of the right to sue, after which the client filed a legal malpractice claim against the attorney. The attorney/client relationship was stipulated, as was the failure to timely file a petition for damages. It was also stipulated that the plaintiff would have been successful in her lawsuit against the tortfeasor. Thus, the attorney's duty to the client and breach of that duty were both established, leaving only the element of damages to be litigated.

The attorney who had committed the malpractice asserted, through a motion for partial summary judgment, that the former client's recovery "could be no greater than her potential recovery in the underlying personal injury lawsuit [and that] recovery…should be capped at [the tortfeasor's] insurance policy limits," in that

5

case, $30,000.00. *Id.* at p. 2; 315 So.3d at 177. The district court agreed with the attorney, on the basis that the tortfeasor had testified at his deposition that if a judgment above the limits of his insurance policy had been awarded against him, he would have filed bankruptcy. The district court reasoned that if the attorney were not permitted to assert a collectability defense, then "where there is limited insurance coverage, [the plaintiff] would be better off if their attorney committed malpractice, because the attorney would have more coverage than that underlying coverage." *Id.* at pp. 2-3; 315 So.3d at 177. The district court found that such a result could not be countenanced.

The Third Circuit Court of Appeal reversed, finding that, based on the holdings of the Louisiana Supreme Court in *Rodriguez v. Traylor,* 468 So.2d 1186, 1188 (La. 1995 (holding that "the wealth or poverty of a party to a lawsuit is not a proper consideration in the determination of compensatory damages") and *Costello v. Hardy,* 03-1146 (La. 1/21/04), 864 So.2d 129, 138 (holding that "[a] plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim"), collectability is not an issue properly considered in a legal malpractice claim. The Third Circuit held that:

> [T]he Defendants cannot rely on a hypothetical situation of bankruptcy to limit Ms. Ewing's recovery. It is just as possible that Mr. Melancon [the defendant in the underlying action] may not file bankruptcy and the judgment may become collectible in the future should Mr. Melancon receive some money from other sources…Ms. Ewing had a right to judgment for the recovery of the full amount of her damages…without the consideration of his ability to pay….An inability to pay Ms. Ewing does not relieve Mr. Melancon of the obligation to pay….Because of [the attorney's] negligence, we will never know what Ms. Ewing would have collected from Mr. Melancon. [The attorney] can have no greater rights in his defense of legal malpractice than Mr. Melancon would have had in the underlying suit. Ms. Ewing is entitled to the same rights against the defendants as she had against Mr. Melancon…Collectability could not be raised in the underlying lawsuit and should not be considered in Ms. Ewing's malpractice claim against the Defendants either.

*Ewing v. Westport Ins. Corp.,* 19-551 (La. App. 3 Cir. 2/5/20), 290 So.3d 708, 711.

6

The attorney/defendant filed an application for supervisory writs to the Louisiana Supreme Court, which was granted to consider the issue of collectability in legal malpractice actions. Although *res nova* in Louisiana, the Supreme Court pointed out that the majority of courts in other states that have considered the issue of collectability in legal malpractice cases have ruled that collectability is an essential element of the plaintiff's legal malpractice case and have placed the burden on the plaintiff to demonstrate the amount that she could have collected from the underlying tortfeasor but for the intervening negligence of the attorney. 20-339 at pp. 4-6, 8; 315 So.3d at 178-79, 180. The Court also pointed out that a growing number of courts from other states have allowed collectability to be pled by the attorney/defendant as an affirmative defense that mitigates the consequences of the attorney's negligent acts. In these cases, the burden is on the attorney/defendant to plead and prove that any judgment that may have been rendered in the underlying action would not, in any case, have been collectable. 20-339 at pp. 6-8, 315 So.3d at 180.

In the absence of relevant statutory authority, the Court was guided by Louisiana jurisprudence and public policy, leading it to conclude that "the collectability rule is not applicable in legal malpractice cases" in Louisiana. 20-339 at p. 8, 315 So.3d at 180, citing *Costello,* 03-1146 at p. 10; 864 So.2d at 138. The elements of a legal malpractice claim under Louisiana law are (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. *Jenkins v. St. Paul Fire & Marine Ins. Co.,* 422 So.2d 1109. Louisiana has long ago abandoned the case within a case rule (which would require the plaintiff to prove not only that the attorney was negligent but that the client's claim or action would have been successful but for the attorney's negligence) in legal malpractice cases. In *Jenkins* the Louisiana Supreme Court held that:

7

[O]nce the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit…[A] rule which requires the client to prove the amount of damages by trying the 'case within a case' simply imposes too great a standard of certainty of proof. Rather, the more logical approach is to impose on the negligent attorney…the burden of [then] going forward with evidence to overcome the client's prima facie case by proving that the client could not have succeeded on the original claim, and the causation and damage questions are then up to the jury to decide.[4]

422 So.2d at 1110.

The *Ewing* court confirmed that the 'case within a case' doctrine does not apply to legal malpractice actions in Louisiana and opined that once the plaintiff in a legal malpractice action proves that her former attorney's negligence caused her to lose the opportunity to assert a claim, "she has established the inference of causation of damages resulting from the lost opportunity for recovery." 20-339 at p. 9, 315 So.3d at 181. The plaintiff does not also have to prove that "she would have successfully been able to execute on the judgment in the underlying case or that the judgment was collectable. Collectability is not an element of the plaintiff's legal malpractice claim in Louisiana." *Id.*

The *Ewing* defendants did not assert that the plaintiff was required to prove collectability, but contended that they should be able to assert collectability as an affirmative defense. The Court disagreed, holding that:

> A legal malpractice claim in Louisiana is a negligence claim, and thus derives from La. C.C. arts. 2315 and 2316…These articles do not limit the damages available in legal malpractice actions based on the collectability of the judgment against a particular tortfeasor.
>
> ***
>
> A money judgment rendered against a tortfeasor has intrinsic value, regardless of collectability of that judgment. We hold collectability is not relevant to the correct measure of a legal malpractice plaintiff's

---

[4] *Jenkins* was a plurality decision in which Justice Dennis dissented, approving the abandonment of the case-within-the-case requirement but opining that "our civil code and justice require that a person whose legal rights have been permanently prejudiced by the wrongful acts of his attorney be afforded a more complete remedy…[and that] the party guilty of malpractice [should be required to] repair the wrong he has done to his client by paying him an amount equal to the value of the right destroyed." 422 So.2d at 1114-15.

damages…We will not allow a malpractice defendant to assert a defense based on the wealth or poverty of the underlying tortfeasor when a defendant in any other type of tort action could not assert a similarly based defense.[5]

*Ewing* did not *change* the law, it merely interpreted existing law – *i.e.,* Civil Code Articles 2315 and 2316 – and confirmed what the law had always been. The ability to enforce or collect a judgment was not a consideration in an underlying tort action and therefore, was not a consideration in a legal malpractice action under then-existing law.

### B. La. R.S. 9:5605.2

In 2022, the legislature passed Acts 2022, No. 285 § 1 ("Act 285"), enacting La. R.S. 9:5605.2, which appears in "Code Title XXIV – Prescription, Part 1., Periods of Prescription, Subpart A. One Year,"[6] and provides that:

> In any action for damages by a client against an attorney, the client's recovery against the attorney shall be limited to the amount of damages which the attorney shows by a preponderance of the evidence would have been the maximum amount of damages that the client could have collected in the client's underlying action in which he was represented by the attorney.

Section 2 of Acts 2022, No. 285 ("Act 285") states that section 1 of Act 285 is "intended to legislatively overrule the holding that collectability of damages against the tortfeasor in an underlying lawsuit is not an affirmative defense to a legal malpractice action as held in the Louisiana Supreme Court decision, *Ewing v. Westport Ins. Co.,* 315 So.3d 175 (La. 2020)." Act 285 was approved on June 6, 2022 and became effective July 1, 2022. This enactment represents a change in the law because, at the time of its enactment, collectability was not a consideration in a legal malpractice action. The question then becomes whether this change applies to causes of action acquired and existing prior to the effective date of the act.

### C. Retroactive Application of Laws

---

[5] 20-339 at 10-11, 315 So.3d at 182-83.
[6] La. R.S. 9:5605 sets out the prescriptive periods and provisions applicable to actions for legal malpractice. R.S. 9:5605.1 relates to the prescriptive period applicable to a claim of theft of client funds.

9

Article 6 of the Louisiana Civil Code provides that, in the absence of contrary legislative expression, substantive laws apply prospectively only, but procedural and interpretive laws apply both prospectively and retroactively. Similarly, La. R.S. 1:2 provides that "[n]o section of the Revised Statutes is retroactive unless it is expressly so stated." Even though R.S. 1:2 makes no distinction between whether a law is substantive, procedural or interpretive, case law has interpreted Article 6 and R.S. 1:2 as being coextensive.[7]

The Louisiana Supreme Court has held that the interpretation of Article 6 and R.S. 1:2 involves a two-part analysis:

> First, [the court] must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, [the court's] inquiry is at an end. If the legislature did not, [the court] must classify the enactment as substantive, procedural or interpretative.[8]

The foregoing is, however, subject to the caveat that, even if the legislature expresses its intention that a law is to be applied retrospectively, if the law is *substantive,* it cannot be given retroactive application if the effect would be to impair contractual or vested rights. *Unwired Telecom,* 03-732 at 15, 903 So.2d at 404, citing *Smith v. Board of Trustees of Louisiana State Employee's Retirement System,* 02-2161 (La. 6/27/03), 851 So.2d 1100.

Act 285 is silent as to the legislature's intent regarding whether the La. R.S. 9:5605.2 is to be applied retroactively, necessitating an analysis of whether the statute is substantive, procedural or interpretative.[9] A substantive law is one that

---

[7] *Bourgeois v. P.P. Green Indus. Inc.,* 00-1528 (La. 4/3/01), 783 So.2d 1251, 1256; *Unwired Telecom Corp. v. Parish of Calcasieu,* 03-732 (La. 1/19/05), 903 So.2d 392.

[8] *Cole v. Celotex Corp.,* 599 So.2d 1058, 1063 (La. 1992).

[9] In fact, however, there is no reference in Article 6 to remedial or curative legislation, as is noted in Editor's Comment (d) to Article 6, which states:

> Article 6 makes no reference to so-called remedial legislation because of the multiplicity of meanings assigned to it. A remedial law may be procedural, interpretative, or substantive. A procedural law is remedial in the sense of dealing with the remedy rather than with the right itself. An interpretative law is remedial in the sense of remedying an error or ambiguity in the prior law. In both situations the new law may, in principle, apply retroactively even in the absence of express

creates, confers, defines, destroys, or otherwise regulates rights, liabilities, causes of action or legal duties. *State v. Foret,* 2015-1298 (La. 1/27/16), 188 So.3d 154, 160. Substantive laws either establish new rules, rights and duties or change existing ones. *Id.* Procedural, curative and interpretative laws relate to the form of the proceeding or operation of the laws. Procedural laws relate to methods for enforcing, processing, administering, or determining rights liabilities or status. Curative laws remove past disabilities in order prescribe a method for enforcing a substantive right and relate to the form of the proceeding or operation of laws. Interpretative laws establish the meaning the statute had from the time of its enactment. The original statute, not the interpretative act establishes the rights and duties. Legislation that changes existing laws is not interpretative. *Genusa v. Dominique,* 97-0047 (La. App. 1 Cir 2/20/98), 708 So.2d 784, 790-91.

In *Coates v. Owens-Corning Fiberglass Corp.,* 444 So.2d 788 (1984), the Louisiana Supreme Court was called upon to determine whether Act 202 of 1982, which amended La. C.C. art. 2315 to allow recovery for loss of consortium could be applied retroactively or was to be applied prospectively only. The Court found that "[i]t is well-settled that newly enacted laws can only be applied prospectively unless they can be characterized as interpretive, remedial or procedural." 444 So.2d at 789. (Citations omitted). The Court noted, however, that:

> The distinction between substantive and procedural laws is not always clear. Generally speaking, an interpretive law does not establish new rights but rather clarifies the method by which already existing rights may be enforced. Substantive laws generally create new rights where none previously existed.

---

language to that effect. However, a substantive law may also be, and often is, called remedial when it remedies an existing social problem resulting from a gap, silence, or deficiency of the prior law. In such a situation, the new law should not be applied retroactively, absent a contrary and constitutionally permissible legislative directive.

Citing *Rodriguez v. Brown & Root, Inc.*, 410 So.2d 325 (La. App. 4th Cir.1982); *Manuel v. Carolina Casualty Ins. Co.,* 136 So.2d 275 (La. App.3d Cir.1961); *Tessier v. H.S. Anderson Trucking Co.*, 713 F.2d 135 ( 5th Cir. (U.S.) 1983).

11

*Id.* at 790.  Citation omitted).

Because the amendment to Article 2315 established rights that did not previously exist, the amendment applied prospectively only.  *Id.*

In *Bourgeois v. A.P. Green Industries, Inc., et al.,* 2000-1528 (La. 4/3/2001), 783 So.2d 1251 (hereinafter, "*Bourgeois II*"), the Louisiana Supreme Court was called upon to determine whether another amendment to Article 2315 could be applied retroactively.  In that case, as here, the legislature passed an act to overrule the Louisiana Supreme Court's decision in *Bourgeois v. A.P. Green Indus., Inc.,* 97-3188 (La. 7/8/98), 716 So.2d 355 (referred to hereinafter as "*Bourgeois I*").

In *Bourgeois I,* the Court had held that the reasonable cost of medical monitoring is a compensable item of damage under Article 2315, provided certain conditions were met.  In response to *Bourgeois I,* the legislature enacted Act 989 of 1999 ("Act 989"), which amended Article 2315 to eliminate medical monitoring as a compensable item of damage in the absence of a manifest physical or mental injury or disease.  Act 989 contained an expression by the legislature that the provisions of the act were "interpretive of Civil Code Article 2315 and [were] intended to explain its original intent, notwithstanding the contrary interpretation given in [*Bourgeois I*], and cases consistent therewith."  Act 989 further expressed the intent of the legislature that "[t]he provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date."  Act 989 became effective July 9, 1999.

After the effective date of Act 989, the defendants filed exceptions of no cause of action on the grounds that the plaintiffs had not met the requirements imposed by Act 989. The plaintiffs then sought to have the court declare Act 989 unconstitutional in relation to their causes of action, as it would deprive them of vested rights. The

defendants contended that Act 989 was interpretative and to be given retroactive application. *Bourgeois II,* 783 So.2d at 1256.

The *Bourgeois II* court acknowledged that the legislature is free to give its enactments retroactive effect, but only if consistent with the due process and contract clauses of the U.S. and Louisiana Constitutions. Initially, the courts must defer to the stated intent of the legislature in determining whether to apply a statute retroactively. If the legislative intent regarding retroactive application is clear and unmistakable, the court's inquiry ends there unless constitutional protections are implicated. *Id.* at 1258-59. (Citations omitted). "When a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process…Thus, a cause of action, once accrued, cannot be divested by subsequent legislation." *Id.* at 1259. (Citations omitted). Moreover, the legislature may not "interpret" a law for the stated purpose of overruling appellate court decision interpreting the law. *Id.* The Court explained:

> In *Bourgeois I,* this court recognized the existence of a cause of action for medical monitoring under Louisiana law and set forth the criteria plaintiffs must satisfy to recover medical monitoring damages. This recognition did not create a new tort…Rather it established what La. C.C. art. 2315 encompassed prior to this court's decision in *Bourgeois I*…The judicial power of the state is constitutionally vested in the courts…Statutory interpretation and the construction to be given to legislative acts is a matter of law and rests with the judicial branch of the government…While it is undeniably true that the decisions of our state courts do not create or eliminate substantive rights as this is the proper function of the legislature…when this court interprets legislative acts, it is giving meaning in particular cases to what the legislature has enacted as law; it is saying what the law is. Thus, prior to the effective date of Act 989, La. C.C. art. 2315 included the reasonable cost of medical monitoring as a compensable item of damage for asymptomatic plaintiffs.
> Because a cause of action…existed prior to the effective date of Act 989, plaintiffs have a vested right to assert their causes of action…if those rights accrued prior to July 9, 1999. A cause of action…means the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant.

*Id.* at 1259-60. (Internal citations and quotation marks omitted; footnote omitted). See also, *Unwired Telecom Corp. v. Parish of Calcasieu,* 2003-0732

(La. 1/19/05), 903 So.2d 392 (legislature could not "overrule" *Mercury Cellular Telephone Co. v. Calcasieu Parish,* 00-0318 (La. App. 3 Cir. 12/11/00), 773 So.2d 914, *writ denied,* 01-0126 (La. 3/16/01), 787 So.2d 314 and create a new substantive law in the guise of interpretative legislation to give retroactive effect because it does not like the result of its legislation as it stands); and *Calcasieu Parish School Board Sales & Use Department v. Nelson Industrial Steam Company,* 2021-00552 (La. 10/10/21) ("the Legislature's power to change the law does not include the power to legislatively overrule a Louisiana court….").

In *Bourgeois II,* Justice Lemmon stated, in his assignment of additional reasons to the opinion of the court pointed out that:

> True interpretative legislation occurs when the Legislature, upon realizing that a previously enacted law contains an ambiguity or an error, amends the prior law to correct the ambiguity or error *before* the law has been judicially interpreted. However, *after* the judicial branch performs its constitutional functions of interpreting a law, and the Legislature disagrees with that interpretation, a *new* legislative enactment is a substantive change in the law and is not an interpretative law, because the original law as interpreted by the judicial branch, no longer applies.

2000-1528, 783 So.2d at 1261. (Footnote omitted; emphasis in original).

We now consider Act 285 in light of the foregoing principles.

### D. La. R.S. 9:5605.2 may not be Applied Retroactively with Respect to Causes of Action Arising Prior to its Effective Date.

As we have previously discussed, the legislature did not express any intent that Act 285 be applied retroactively. The legislature also did not attempt to categorize the provisions of Act 285 as being interpretative or remedial. Silva and Continental contend that because the legislature stated that it was overruling the Supreme Court's decision in *Ewing,* this necessarily means that the law is interpretative. We do not agree and will proceed to make our own Article 6 determination whether the statute is substantive or interpretative.

14

The case law discussed above, particularly, *Bourgeois II, Unwired,* and *Nelson* establish that the interpretation of laws is the province of the judicial branch. Where the legislature disagrees with a decision of an appellate court, interpreting existing law, it may not enact a new law to overrule that decision, and by dubbing it as "interpretative," have the new law apply retroactively. In such a case, no matter the intent of the legislature, the new law effects a substantive change in the law in that the original judicial interpretation of the law no longer applies. La. R.S. 9:5605.2 is a law that effects a substantive change in the law, which may only be applied prospectively.

In case law rendered long before *Ewing,* the Supreme Court held that the case-within-the-case requirement is violative of our civilian principles, as codified in La. C.C. arts. 2315 and 2316. The case-within-the-case requirement and the collectability requirement are similar. Application of the case-within-the-case requirement would compel a plaintiff to demonstrate that she would have prevailed on the merits at trial but for the attorney's negligence, and to prove the amount of damages that would have been awarded. The collectability rule takes the case-within-the-case requirement a step further and would require the plaintiff to also prove the amount she would be able to collect pursuant to the judgment. Although R.S. 9:5605.2 places the burden on the attorney to raise collectability as an affirmative defense, the result to the plaintiff is the same – the plaintiff's recovery is limited to that portion of any judgment that would have been rendered on her underlying claim that the trier of fact finds would actually be collectable from the underlying tortfeasor. The new statute establishes an affirmative defense that was not previously available to defendants in legal malpractice actions under existing law, as established by *Ewing,* and potentially limits the plaintiff's recovery to less than the actual value of her claim.

The operative facts giving rise to Ms. Webber's right to judicially assert the action against Silva, Penton and Continental – Silva and/or Penton's failure to file Ms. Webber's lawsuit against Sly – occurred on November 11, 2020, prior to the effective date of Act 285 (July 1, 2022). At the time Ms. Webber's cause of action against Silva, Penton and Continental arose, the law applicable to her cause of action did not recognize collectability as an element of her claim or as an affirmative defense to be asserted by the legal malpractice defendants.  Act 285 changed the law in that regard. Applying the law discussed above to La. R.S. 9:5605.2, we find that La. R.S. 9:5605.2 effects a substantive change in the law and the collectability rule, established therein may not be applied to Ms. Webber's cause of action in this case.

For the reasons stated above, we grant the writ application of Darlene Webber, reverse the district court's judgment denying her Motion for Partial Summary Judgment, and hereby grant the Motion for Partial Summary Judgment, finding that La. R.S. 9:5605.2 creates a substantive change in the law and cannot be applied retroactively.

Gretna, Louisiana, this 11th day of February, 2025.

**FHW**
**SJW**
**JJM**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **02/11/2025** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

**24-C-378**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable Danyelle M. Taylor (DISTRICT JUDGE)
Catherine N. Thigpen (Respondent)      Charles P. Ciaccio (Relator)
Gus A. Fritchie, III (Respondent)      Edward W. Trapolin (Respondent)
Frank J. D'Amico, Jr. (Relator)        Ashley E. Gilbert (Respondent)

### MAILED

Christopher H. Irwin (Respondent)
Attorney at Law
400 Poydras Street
Suite 2700
New Orleans, LA 70130

U.S. Postal Service™

**CERTIFIED MAIL® RECEIPT**

*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

7016 2070 0000 0954 8964

| Certified Mail Fee | |
|---|---|
| $ | |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt *(hardcopy)* | $ |
| ☐ Return Receipt *(electronic)* | $ |
| ☐ Certified Mail Restricted Delivery | $ |
| ☐ Adult Signature Required | $ |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | |
| $ | |

Postmark
Here

To: Christopher H. Irwin
Attorney at Law
400 Poydras Street
Suite 2700
New Orleans, LA 70130
24-C-378                    02-11-25

PS Form 3800, April 2015 PSN 7530-02-000-9047       See Reverse for Instructions

---

**SENDER: *COMPLETE THIS SECTION***

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Christopher H. Irwin
Attorney at Law
400 Poydras Street
Suite 2700
New Orleans, LA 70130
24-C-378                    02-11-25

9590 9402 2434 6249 3586 17

2. Article Number *(Transfer from service label)*

7016 2070 0000 0954 8964

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
                         ☐ Addressee

B. Received by *(Printed Name)*   |   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                    Domestic Return Receipt